1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Anthony D. Prince (SBN 202892)
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
(510) 301-1472
princelawoffices@yahoo.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BRIGITTE RAELYNN BUTCHER; BILLY JOHN REID; JOLENE ANN REID; SUSAN EXTEIN; STANLEY EXTEIN; MICHAEL ELLIOT; CRYSTAL MOTLEY; DICK VEIT, DENNIS OWENS, DERECK DEMPSEY, CARRIE ANTRAPP, WILBUR BARTHOLOMEW; ANNETTE SKEEN, individually and on behalf of themselves and all others similarly situated; MARYSVILLE HOMELESS UNION, CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL,

               Plaintiffs,

    vs.

CITY OF MARYSVILLE, a municipal entity; MAYOR RICKY SAMAYOA, CITY COUNCILMEMBER DALE WHITMORE, CITY COUNCILMEMBER DON PETTIGO, CITY ATTORNEY BRENT BORSDEN, CHIEF OF POLICE CHRIS SACHS; COUNTY OF YUBA; YUBA COUNTY CODE ENFORCEMENT DIVISION, YUBA COUNTY CODE ENFORCEMENT DIVISION MANAGER JEREMY STRANG, YUBA COUNTY CODE ENFORCEMENT OFFICER TRACEY CLARK; CODE ENFORCEMENT OFFICER CHRIS MONACO, individually and in their official capacities; H&H TRENCHING CO.; DOES 1-100,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

COMPLAINT FOR CIVIL RIGHTS, DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

CLASS ACTION: F.R.CIV.P. 23(b)(2)

42 U.S.C. §§ 1983, 1985(3) (Conspiracy to Interfere with Civil Rights);12101 (Americans With Disabilities Act) and FIRST, FOURTH, FIFTH, EIGHTH and FOURTEENTH AMENDMENTS

CALIFORNIA CONSTITUTION ARTICLE I §§ 7 AND 13

CALIFORNIA CIVIL CODE §§ 52, 52.1 AND §§ 54 – 55.2, § 2080.

CONVERSION
TRESPASS TO CHATTELS
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (BYSTANDER)
FALSE IMPRISONMENT
TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
DEFAMATION

**DEMAND FOR JURY TRIAL**

Plaintiffs BRIGITTE RAELYNN BUTCHER, , BILLY JOHN REID, JOLENE ANN REID, SUSAN EXTEIN, STANLEY EXTEIN, MICHAEL ELLIOT, CRYSTAL MOTLEY, DENNIS OWENS, DERECK DEMPSEY, CARRIE ANTRAPP, WILBUR BARTHOLOMEW, DICK VEIT, and ANNETTE SKEEN individually and on behalf of themselves and all others similarly situated; MARYSVILLE HOMELESS UNION, CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, ("Plaintiffs"), by and through their attorney, Anthony D. Prince, bring this action on behalf of themselves and all others similarly situated, against Defendants CITY OF MARYSVILLE, a municipal entity; COUNTY OF YUBA; YUBA COUNTY CODE ENFORCEMENT DIVISION, YUBA COUNTY WATER DISTRICT; MAYOR RICKY SAMAYOA, CITY COUNCILMEMBER DALE WHITMORE, CITY COUNCILMEMBER DON PETTIGO, CITY ATTORNEY BRENT BORSDEN, MARYSVILLE POLICE CHIEF CHRIS SACHS, YUBA COUNTY CODE ENFORCEMENT OFFICER TRACEY CLARK, YUBA COUNTY CODE ENFORCEMENT DIRECTOR JEREMY STRANG, ("Defendants") individually and in their official capacities. Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to them.

## INTRODUCTION

*"I'm not proud of living at the river but there I was safe and had something over my head and a place to cook my meals. You figure out all the heartache when you see your stuff getting demolished and you can't save anything 'cause the tractors and bulldozers will run you over. And the years of everything you worked for go straight into the ground.    --Theresa Miller*

*"I have been harassed daily by [Yuba County] Code Enforcement or County Sheriffs or Marysville Police Department since the day I was forced to leave my camp and almost everything I own. I have no social security card and no ID so I can't get a job; that was among the property that was*

*destroyed.... I was left with nothing and lied to about getting help. Everytime I start putting my life back together, it's just so the City can tear me back down."* **--John Green**

*"I was raised higher than middle class. We didn't have tons of money but we definitely weren't poor. I always had a home, never lived with poverty, went to modeling school, played the flute, cheerleader, honor roll student. But after my husband lost his job and he had a hard time finding work, we lost our house and our children and ended up at the river bottoms.*

*"To my surprise, there was a whole community down there. Actual trailers, lots of them and tents, like homes everywhere and people everywhere coming out of the woods. Some homes hidden, some seen, kids and everything. Yes, the children went to school. There was a community, the civilization that lived below, not accepted by our citizens.*

*"But Marysville Police destroyed that little town. They came in and moved us like cattle to a place called "The Jungle"—all of us in a line like we were being shown to a [prison] camp, that's how it felt. They flooded us out a year later."* **--Rhonda Thomson**

1. These are just some of the hundreds of harrowing and heartbreaking stories of homeless residents of longstanding, City-and-County-sanctioned encampments known variously as "Avondale", "Upper Hollywood", "Boki Temple", "The Shad Pad", "Horseshoe", "Hollywood Trailer Park ("Hollywood")," and "Thorntree," (also known as "The Jungle") who suffered constitutional violations, severe emotional distress, exposure to increased risk of harm through state action as the result of a civil conspiracy between the City of Marysville, Yuba County, the Yuba County Water Agency and the H&H Trenching Company to destroy the habitations and personal property of hundreds of homeless persons camped for years on the banks and bottoms of the Yuba and Feather Rivers in the City of Marysville and Yuba County.

2. The physical destruction of the camps was preceded by a defamatory public vilification of "the homeless" in local media and at official public functions including meetings of the Marysville City Council and Yuba County Board of Supervisors. Defendants shared a common

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

1    interest and collaborated in an illegal scheme to dispossess plaintiffs forced to occupy the banks and

2    bottoms of the Yuba and Feather Rivers by physically destroying plaintiffs' habitations and nearly

3    all of their possessions using front loaders, bulldozers and dump trucks, the modern-day equivalents

4    of the trampling horse, the battering ram, and the torch.

5         3.      This case centers on a series of interconnected acts and continuing violations of

6    federal and California state constitutional and statutory rights belonging to approximately 300 -5 00

7    homeless people camped, in some cases, for many years along the Yuba River on land either owned

8    or controlled by Defendants City of Marysville and County of Yuba as well as the broader homeless

9    community of Yuba County, the vast majority of whom could not afford housing due to lost jobs,

10   foreclosures and inability to pay the rent. [1] Defendants' acts included the bulldozing of at least eight

11   *de-facto* City and County- sanctioned homeless encampments and the destruction of thousands of

12   items of personal property and resulted in the foreseeable, state-created danger of exiling those so

13   dispossessed further into the backroads and wilds of Yuba County, beside the train tracks and

14   otherwise dispersed in hidden corners of cold, hunger, risk and reality of physical injury.

15        4.      Defendants, and each of them, not only tolerated the existence of these encampments

16   for at least ten years but also --most particularly, Defendant City of Marysville -- actively

17   participated in populating the camps with persons believed to be homeless found on the downtown

18   streets. For example, it was a common practice for Marysville Police to either suggest, order and/or

19   physically transport persons found within city limits perceived as homeless to Hollywood Trailer

---

[1] Although generally considered to routinely and substantially undercount the target population, Point In Time ("P.I.T") surveys of "the homeless" are nonetheless instructive. The January, 25, 2017 PIT survey in Yuba and Sutter County reported 760 homeless persons, of which 299 were identified as living in Yuba County. Of these, 172 were children, 117 were over 55 years of age and 129 were persons with disabilities. As to how they became homeless, 311 had lost their jobs, followed by those who were unable to pay the rent or the house note (209). One hundred and four (104) had fled domestic violence and 45 were United States military veterans. Contrary to the stereotype, only 10% of all those surveyed became homeless due to alcohol or substance abuse. Of the total 760 surveyed, only fourteen (14) people were in so-called "transitional housing" and another 273 were being temporarily "housed" in emergency shelters, domestic violence shelters or were using temporary hotel/motel/apartment vouchers. The majority of the homeless – 473--were completely unsheltered.

Park and other encampments. At all times, Defendants acted like owners or, at the least, *de facto* custodians and landlords over the camps. In so doing, Defendant assumed a duty to exercise reasonable care for the residents of the encampments which it subsequently breached by systematically dismantling them with litte or no notice and absolutely no pre- or post-deprivation opportunity to be heard whatsoever.

5.      Abandoning any pretense of due process, Defendants systematically bulldozed longstanding if makeshift habitations and residents'personal property, herding them from one exposed piece of land to another, including to a notorious "sleep zone" within the same flood plane from which they had been evicted and which subsequently became an uninhabitable mud hole. "Confusion for homeless in Marysville, Yuba County" read the headline in reporter Eric Vodden's March 24, 2016 story  in "The Union," a local on-line news service, citing "two different homeless action plans –Yuba County's code enforcement measures to immediately shut down homeless camps and Marysville's separate plan to serve eviction notices" as a cause of "confusion among the homeless and those who support them." "Also lost in the confusion," continued the story "is what officals say are local efforts to find temporary housing for those being displaced from their camps."

6.      As evidenced by public pronouncements of City and County officials in local media and public meetings in the months and weeks leading up to the systematic destruction of the encampments, it was only after the City began to consider development of the long-neglected riverfront that Defendant suddenly became "concerned" about the health and safety of the homeless "living on a flood plane." Accordingly, in March, 2016, the City of Marysville and Yuba County drafted and implemented a "13-step" plan to "clear out the homeless" which nominally included minimal if not illusory "due process" such as service of Notices of Termination of Tenancy and the filing of unlawful detainers. However, even these minimal due process safeguards were ultimately abandoned six months later in what became an unbridled sacking in which the Constitution was

bulldozed along with the meager habitations and the contents thereof belonging hundreds of members of a disfavored minority.

7.     Society has become used to reducing homeless persons to a blameworthy caste of parasites with no rights, deserving at best pity and, more commonly, scorn, but never dignity. Defendant City of Marysville exemplifies this admixture of false pity and contempt. Ten years ago, the City designated three parking meters as receptacles for passersby to drop a few coins for the homeless. One such parking meter, painted red and located near the historic downtown area has been broken for years, as anyone who uses it will see their quarter tumble to the sidewalk, the coin box hanging open, the lock long-ago punched out and never repaired. Affixed to the broken meter's pole is a sign that reads, "A donation here will provide help for the homeless." In the lower portion of the sign the City of Marysville advises "Please do not give cash to panhandlers," a facially unconstitutional restraint on the well-established First Amendment right of poor people to solicit contributions from the public, but a good way to keep the homeless off the downtown streets.

8.     Ironically, this is not the first time that the City of Marysville has been the epicenter of an unconstitutional scheme to rid itself of its "undesirables." In 1941, the United States Supreme Court decided the case of *Edwards v. California* 314 U.S. 160 (1941) in which it deemed unconstitutional a California statute -- the so-called "Anti-Okie Law -- enacted during the Great Depression "Dust Bowl" when some 230,000 poor and desperate migrants made their way to the "Golden State." Section 2615 of the Welfare and Instiutions Code made it a criminal offense to knowingly bring an indigent non-California resident into the state. Marysville resident Edwards had returned from a trip to Texas where he had picked up his unemployed brother in law. The statute remained in force until the Depression and the massive migration to California came to an end, the Supreme Court finding the law an unconstitutional constraint on the rights of poor people to travel. Now, seventy-seven years after the Supreme Court turned its attention to Marysville and upheld the

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

right of an indigent to *enter* Yuba County, Defendants have turned back the clock, essentially

making it a crime to *be* a poor person, or, in any case a homeless person, in Yuba County.

## CLASS ALLEGATIONS

9.      The claims set forth hereinafter are brought by Plaintiffs on their own behalf and as

representatives of Class of similarly-situated persons pursuant to Rules 23(a), 23(b)(2) and 23(b)3 of

the Federal Rules of Civil Procedure. The proposed class consists of all homeless persons in the City

of Marysville and throughout Yuba County whose habitations and personal possessions have been or

will be destroyed by the execution of Defendants' policies and practices of homeless encampment

"clean-ups" which have deprived hundreds of people of liberty, property and even life without due

process of law.[2]

10.      Each of the acts complained of herein was taken, and each violation of plaintiffs'

rights occurred, pursuant to the policies, practices or customs of Defendants, and each of them,  as

executed by one or more of the subdivisions of Defendants City of Marysville and Yuba County.

In doing each of the constitutional violations complained of herein, Defendants, their officials,

agents, and employees were acting under color of law.

11.      Plaintiffs are informed and believe and on such basis allege that at all times relevant

to this action, each of the individuals who seized and destroyed their property were the agents,

servants and/or employees of Defendants and each of them were acting at all times within the scope

---

[2] On August 1, 2018, Shanon Marie Bigley, a 33-year old homeless woman in Modesto was run over and killed by CalTrain heavy equipment bulldozing a homeless encampment on the side of Highway 99. She was asleep in a cardboard box. (*See* www.modbee.com/news/article217453845.html.). In the case at bar, Defendants similarly failed— and continue to fail- to conduct any pre-demolition search whatsoever, let alone one designed to determine with absolute certainty that no one was in the path of destruction before the bulldozers and front loaders roared into operation. On the contrary, many homeless in Yuba County, barely escaped with their lives during chaotic "clean-ups" as frontloaders tore into occupied RV's and makeshift shelters. *See,* series of You-Tube videos variously depicting destruction of homeless encampments at https://youtu.be/t5Z1-rQde; https://youtu.be/5EtGtkeHp6k; https://youtu.be/o4ROXx-iWSY; https://youtu.be/KisLUeHhlRY.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

of their agency and employment and with the knowledge and consent of their respective principals and employers.

12.     Plaintiffs are informed and believe that the acts complained of herein were done in the furtherance of the customs, policies and practices of authorized policymakers of the Defendants and each o0f them and were joined in and/or implemented by the Defendants' agents and employees who seized and destroyed Plaintiffs' property. Each of these individual officers and employees were acting as the agent and employee in concert with each other. Each of Defendants' agents and employees caused the violation of Plaintiffs' constitutional and statutory rights and the resulting injuries by, among other things, participating personally in the unlawful conduct; by authorizing, acquiescing or setting in motion the policies, plans and actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by demonstrating deliberate indifference to the need to maintain adequate training and supervision; and by failing to take remedial and disciplinary action.

13.     The individual plaintiffs named above herein bring this action both as individuals and as representatives of the class pursuant to F.R.Civ.P. 23(b)(2) to certify an injunctive relief class. The class is defined as: All individuals who are homeless and reside in Yuba County whose structures and other forms of makeshift habitation and personal belongings have been or will be seized and destroyed by the agents and employees of the Defendants with little or no effective notice nor pre-deprivation or post-deprivation hearing and opportunity to store, retrieve or continue to possess the property,

14.     The class consists of approximately 300-500 persons who were forcibly removed from the homeless encampments variously known as Avondale, Upper Hollywood, Horseshoe, Shad Pad, Boki Temple, Thorntree (otherwise known as "the Jungle") and the Hollywood Trailer Park ("Hollywood") as well as all homeless persons who reside in the City of Marysville or anywhere in Yuba County who are unable to afford traditional housing or who have otherwise

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

become homeless. The members of the class are so numerous as to make joinder impracticable. There are common questions of law and fact that predominate over any questions affecting individual class members are the following;

a)  Whether Defendant CITY and COUNTY CITY's ordinances, regulations,policies, practices and conduct of seizing and destroying the habitations and personal property of individuals who are homeless, without adequate notice or an opportunity to have a meaningful pre- or post-deprivation hearing, or opportunity to retrieve vital personal possessions before the deprivation of these possessions or being provided with suitable, permanent alternative housing causes irreversible harm or before they are destroyed, violated and continues to violate the class members' state and federal constitutional rights against unreasonable seizure;

b)  Whether these same ordinances, regulations, policies, practices and conduct violated and continue to violate the class members' state and federal constitutional rights to due process;

c)  Whether these same policies, practices and conduct violated and continue to violate the class members' state and federal constitutional rights to be free from excessive bail and cruel and unusual punishment.

d)  Whether these same ordinances, regulations, policies, practices and conduct violated and continue to violate the class members' rights pursuant to California Civil Code §§ 52 and 52.1, Civil Code § 2080;

e)  Whether these same ordinances, regulations, policies, practices and conduct violated and continue to violate the class members' state and federal constitutional rights to be justly compensated for property taken by the government;

f)  Whether these same ordinances, regulations, policies, practices and conduct violated and continue to violate the class members' state and federal constitutional rights to freedom

of speech by being both overbroad and void for vagueness;

g) Whether injunctive relief should issue to enjoin the policy, practice and conduct of the Defendants' agents and employees in seizing and destroying the property of homeless individuals in the City of Marysville and County of Yuba.

15.     The claims of the class representatives are typical of those of the class members with respect to the constitutionality and legality of Defendants' policies, practices and conduct at issue here. The prosecution of individual actions against the Defendants by individual class members would create a risk of inconsistent and varying adjudications, which would result in variable standards of conduct for defendant.

16.     The class representatives will fairly and adequately protect the interests of the class members and are unaware of any conflict among or between the class members that would preclude their fair and adequate representation. Class counsel is a litigator and trial attorney with over twenty years' experience in homeless advocacy, housing, civil rights, labor and employment law who serves as General Counsel for the California Homeless Union/Statewide Organizing Council who will be assisted by additional attorneys with extensive class action experience.

**JURISDICTION AND VENUE**

17.     This is an action for injunctive relief pursuant to 42 U.S.C. §1983 and F.R.Civ.P. 23(b)(2), as well as damages and declaratory relief based upon past and continuing violations by the Defendant of the rights secured to Plaintiffs by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States Constitution and relevant federal statutory protections; The California State Constitution and relevant state statutory protections. Jurisdiction exists based on 28 U.S.C. § 1331 and 1343(a)(3). Jurisdiction supporting the claim for attorney fees is conferred by 42 U.S.C. § 1988. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

18.     Venue is proper in the Eastern District in that the events and conduct complained of in this action all occurred in the Eastern District.

**STATEMENT OF FACTS**

19.     The physical destruction of the homeless encampments known as Avondale, Upper Hollywood, Shad Pad, Boki Temple, Horseshoe, and Hollywood Park Trailer Park ("Hollywood") beginning on or about June, 2016 was, in principal part, the direct handiwork of officials and agents of the City of Marysville, County of Yuba, Defendant H&H Trenching.

20.     However, while certain of Defendants—particularly Yuba County, the Yuba County Code Enforcement Division and H&H Trenching –were the most directly responsible for the physical destruction of the camps, it is equally true that Defendant City of Marysville instigated, initiated, authorized, facilitated, assisted, planned and colluded with its co-defendants and had a common and conspiratorial interest and role in the destruction of the encampments. The relationship between Defendant City of Marysville and Defendant Yuba County was simultaneously that of agent and principal, respectively, as well as co-conspirator in the forced dispersal of the residents, the seizure and illegal destruction of thousands of items of personal property and the deprivation of a host of Federal and State constitutional rights belonging to the unfortunate inhabitants. Accordingly, the unlawful acts of Yuba County are imputed to its principal and co-conspirator Defendant City of Marysville along with Defendant City of Marysville which is also responsible, of course, for its own direct participation, including, but not limited to the presence of armed police and members of the Marysville City Council durng encampment "clean-ups."

21.     On March 15, 2016, the Marysville City Council adopted a "13-Step" plan to expel the homeless from encampments on City-owned property outside of the city limits. The plan had been developed by the City of Marysville and Yuba County by way of a "City-County Liaison Committee." Significantly, Hollywood Park approved by the Marysville City Council on March 15,

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

2016 which expressly assigns specific shared responsibilities to Marysville's City Services Department (CSD), the Marysville Police Department, Yuba County Sheriff's Department (YCSO), Yuba County Code Enforcement and the Marysville City Attorney. The "13-step plan" alone shows collusion between the two entities.

22.     At its March 15, 2016 meeting, the Marysville City Council, at the instigation of Mayor Ricky Samayoa, voted unanimously to accept a joint City of Marysville/Yuba County "13-step plan" entitled "Tasks and Timeline for Removing Unauthorized Occupants From City-Owned Lands." The plan, which was, in the words of then City Manager Walter K. Munchheimer "guided by direction from the City Attorney in consultation with the Yuba County Sheriff's Office," called for removing "as many persons as possible" out of the "subject properties" by "relying on Trespass law" as opposed to eviction a legal process which Munchheimer bemoaned "has many statutory procedural steps and timelines to be observed, and requires many more human and physical resources to accomplish."

23.     However, two weeks later, appearing to proceed directly to eviction as opposed to "relying on Trespass law" the Defendant mailed "Notice[s]To Terminate Tenancy" postmarked March 29, 2016 to a small percentage of the homeless residing on city-owned land outside the city limits.  Every letter was "Returned to Sender" as "Unclaimed, Unable to Forward."  There is no evidence that any further attempt was made to serve the Notice, personally, by publication or otherwise, on any member of the Plaintiff class.

24.     Three days before the Notices were sent, Marysville Mayor Ricky Samayoa had promised that residents evicted from homeless encampments would be entitled to due process. "[I]t's not an immediate eviction," Samayoa told "The Union," an online local news source, "They will have their legal rights so can be represented as they want."  The Union story went on to report "People not leaving after 30 days will be served with unlawful detainer complaints, but could choose to fight the eviction in Yuba County Superior Court."

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

25.     Unfortunately, however, there would be no day in court for the homeless, because after mailing the Notices and waiting the required thirty days, the City, without explanation, failed to file the promised unlawful detainers against any campers, a fact admitted on by Marysville Police Chief Chris Sachs during his August 21, 2018 deposition in the case of *Brown v. City of Marysville*, Yuba County Superior Court Case No. CVCV 17-00622.

26.     In a letter dated October 12, 2016 Defendant City Attorney Brent Borsden authorized Yuba County Code Enforcement Division Manager Jeremy Strang to "inspect…and take any appropriate action deemed necessary as a result of such inspection." While this letter, standing alone, is sufficient to show both agency and concerted action, additional documents recently compelled from Defendant in the Yuba County Superior Court  case of *Bryan Brown v. City of Marysville* show that the City of Marysville worked directly with Yuba County to plan, facilitate and conduct the dismantling of the camp and the seizure and destruction thousands of items of personal property belonging to Mr. Brown. It would appear that Defendant's use of the word "appropriate" was a barely-disguised attempt to prophylactically insulate Defendant City of Marysville from the consequences of the subsequent misconduct of its co-conspirator and agent Defendant Yuba County and its code enforcement officials, employees and contractor H&H Trenching, Inc.

27,     On or about Wednesday, October 12, 2016, an item appeared in the local Appeal-Democrat reporting that that Yuba County had received a grant to fund a "removal project" aimed at forcibly removing homeless persons from the Hollywood camp, in part, to facilitate the development of a recreational area. Many Hollywood residents began posting signs stating that permission to take or destroy their property was not granted.

28.     On or about Friday, October 15, 2016, a number of Hollywood Park residents created signs and assembled in peaceful protest at the Marysville City Hall against the announced "removal project."  When Defendants later seized and destroyed residents' property, including

paper, cardboard, paint, drawing and writing materials, they made it impossible for Plaintiffs to write letters to elected officials or prepare signs for future protests or to create public awareness of Defendants' anti-homeless acts, thereby substantially interfering with Plaintiffs' right to freedom of expression under the Federal and California State constitutions.

29.    On October 17, 2016, officials of Yuba County, accompanied by the Marysville Police Department, suddenly appeared at the Hollywood Park encampment and posted unsigned Notices bearing the Yuba County Seal and the name and address of the "Yuba County Code Enforcement [sic]." One such notice was affixed to the fence that surrounded the habitation occupied for over nine years by Plaintiff Brigitte Raelynn Butcher and her partner, Bryan Lee Brown. However, neither Plaintiff Butcher nor Brown saw the sign until the next morning when they were awakened by the sound of bulldozers tearing Hollywood Park apart. The same *modus operandi* had been deployed at all preceding homeless encampment "clean-ups." Rather than be bothered with the "procedural steps and timelines to be observed" or be burdened with a legal process that "requires many more human and physical resources to accomplish," as City Manager Murchhinson lamented in his March 15, 2016 report to City Council, the City simply decided to get its agent and co-conspirator Yuba County to do the dirty work under a pretext of enforcing the County Code.

30.    In sum, Defendant City of Marysville's public pronouncement that the homeless would "have their legal rights [to] be represented as they want" was actually designed or certainly had the effect of encouraging reliance on a false promise of due process; to lull the residents into believing they would not be summarily kicked out. Even if residents of the encampments had actually received the County notices, all of which provided no more than 24 hours' notice of the bulldozing, the practical impossibility of encampment residents making arrangements to transport and find places to store thousands of possessions accumulated, in some cases, for over a decade, was manifest. The seizures amount to asset forfeitures that unlike what occurs in the corporate

- 14 -

world wherein constitutional due process safeguards are observed when assets are taken, Plaintiffs here, at best and only rarely, received less than 24 hours' notice and absolutely no opportunity to be heard by a neutral decider before what they couldn't hastily cart away on their backs. See line of cases beginning with *U.S. v. Monsanto*, 491 U.S. 600, 615 (1989) for the due process protections afforded by U.S. corporations re asset forfeiture.

31.    In the weeks and months preceding the systematic destruction of the encampments, public statements of intent to eradicate Hollywood Park by various members of the Marysville City Council, editorials placed in local newspapers, and formal decisions taken by the Marysville City Council along with contemporaneous public pronouncements vilifying the homeless proliferated. Riverbottom campers were defamed and generally accused of creating a public health hazard as Defendants exaggerated the impact of the encampments on the riverine environment and water quality. [3] At the same time, the evidence also shows Defendant made promises suggesting that Hollywood's residents would be allowed to remain, including, for example, discussion of the establishment at the campsite of sanitary facilities. Thus, right up to the days when the bulldozing began, Defendants held out the false promise that Plaintiffs would either be permitted to stay and, in fact be provided with the basic infrastructure to do so, or they would be be provided due process and an opportunity to either cure or offer a defense by way of unlawful detainer proceedings. Both "commitments" proved to be fraudulent and illusory. "

**AN AGENCY RELATIONSHIP AND A CIVIL CONSPIRACY EXISTED BETWEEN DEFENDANT AND YUBA COUNTY**

---

[3] In the related case of *Bryan Lee Brown v. City of Marysville*, Yuba County Superior Court Case No. CVCV 17-00622, Defendant City of Marysville -- in response to a court order compelling production of designated witnesses and documents -- produced a report entitled "Assessment of Environmental Impacts of Homeless Encampments along the Yuba River" prepared by "HDR" for Yuba County and the Yuba County Water Agency dated September, 2016. Although the authors did note material ranging from food waste to abandoned cars unearthed during cleanups, they nevertheless reported that "during HDR's visit **_no direct effects to the aquatic environment_** were observed."(Emphasis added.) In addition, HDR investigators "*did not observe any direct impacts* to water quality." (Emphasis added.)

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

32.     The 13-Step plan and other documents disclosed through discovery in the related case of *Brown v. City of Marysville* show a wrongful common design and interest in destroying the Hollywood Park encampment.  Generally, a civil conspiracy is not a discrete claim, but the means by which a party which may not itself have performed any overt act in furtherance of a crime, tort or constitutional violation may nonetheless be held vicariously liable for such harms inflicted by another. Here, Plaintiffs' allegations include violation of  43 U.SC. § 1985(3) in that Defendants conspired for the purpose of denyng Plaintiffs the equal protection of the laws. A conspiracy need not include an express agreement between the would-be conspirators. On October 12, 2016, City Attorney Brent Borsden sent a letter to Yuba County Code Enforcement Officer Jeremy Strang in which Borsden, on behalf of the City of Marysville "authorized However, that a mere pious expression of innocent intent cannot in advance prophylactically insulate a principal from the wrongful acts of its agent or its co-conspirator. Indeed, California Civil Jury Instructions (CACI) NO. 3600 expressly provides as follows: "A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. [Plaintiff] is not required to prove that [Defendant] personally committed a wrongful act or that [he/she] knew all the details of the agreement or the identities of all the other participants." Finally, as the notes to CACI 3600 indicate, "Conspiracies are typically proved by circumstantial evidence. '[S]ince such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.' "

33.     After the demolition of the encampments, the City directed Plaintiffs to go to another area also designated as a major flood zone.  Defendant segmented this major flood zone into two areas: A-Zone and B-Zone ad told told former residents that they could occupy A-Zone only on Mondays, Wednesdays, and Fridays, and B-Zone only on Sundays, Tuesdays, Thursdays, and Saturdays, inhumanely forcing them, to move everything that they owned every twenty-four (24)

hours, leaving only one forty-eight (48) hour period per week that residents would not be forced to move.

34.     Ultimately, Defendant's creation of A-Zone and B-Zone with its cruel, unusual, and draconian rules was a farce because this area was utterly uninhabitable.  The area was referred to as a "mud hole," which was full of standing water, making it impossible for any person to make any living arrangement in the area. Finally, it was completely flooded and closed with no provisions made to house its exiles.

35.     Following the destruction of the encampments, Chaya Galacia, from the Homeless Project of Yuba County, acting in her own capacity and as an agent of the Defendant, distributed "housing vouchers" to a limited number of former  residents.  However, in most cases, Galacia asked residents to return the vouchers back to her. Plaintiffs were forced to wander the streets for months and suffering from insomnia, sleep deprivation, lack of appetite, anxiety, and depression.

36.     In addition to the personal emotional distress brought on by the destruction of the encampments, Plaintiffs were forced to bear witness as their friends, neighbors and family members in communities which hundreds of people unable to afford traditional housing had worked so hard to build fell victim to a modern-day sacking that would provoke international outcry had it taken place in any of the world's proliferating refugee camps.

**PLAINTIFFS**

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*



37.      Plaintiff **BRIGITTE RAELYNN BUTCHER** was born in Cloverdale, California.  After graduating high school, she attended Peninsula Medical School. As the result of growing up with an alcoholic father, Raelynn, as she is known, has struggled her entire life and has frequently been compelled to escape the abusive environment in which lived.  Beginning in 1979, Raelynn began living intermittently on the Yuba River. Through her stepfather, Mr. Harold Draper who operated a towing company and had occasion to become familiar with homeless residents of Marysville, Raelynn became increasingly drawn by a calling to care for and support the members of this dispossessed community. In 2008, Raelynn went to the Hollywood Trailer Park encampment where she soon became known variously as "Mayor of the Homeless" and "Mayor of Hollywood."

38.     Raelynn became a leader officially recognized by Defendant City of Marysville, named to the Homeless Consortium, a position she continues to hold. Over the course of almost ten years, Defendant City directed homeless persons found on the streets of Marysville to Raelynn. Dozens of individuals would show up at the Mayor's Mansion and report to Raelynn that they had been ordered to go there by Marysville police. lived with her partner Bryan Lee Brown in a structure built by Mr. Brown and known as the "Mayor's Mansion." Raelynn operated a community kitchen feeding Hollywood Park residents and was in the process of publishing a community cookbook at the time that the "Mansion" was destroyed, along with the recipes she had collected. With her partner Bryan Lee Brown, Raelynn operated a 3,500-volume circulating library, provided

- 18 -

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

drug rehabilitation and other supportive services to recently-released prisoners brought or sent by police or other City officials with the full knowledge and sanction of the California Department of Corrections and Rehabilitation. Raelynn conducted tours of Hollywood for college students and younger children to demonstrate the falsity of the malicious anti-homeless stereotypes that Defendants would later rely upon as a pretext for persecution.

39.    On or about October 16, 2016, when word of the impending destruction of the Hollywood Park encampment reached Raelynn, she helped organize a protest in Washington Square Park on or about October 16, 2016. Earlier, she had agreed to conduct a "Point In Time" survey of homeless persons. Later, City Councilmember Dale Whitmore repeatedly attempted to get Raelynn to provide to them the names of the homeless surveyed. At all times, Raelynn's concerns for the members of the community took precedence over her own well-being and the safeguarding –to the extent it was possible—of her own personal possessions.

40.    On October 18, 2016, Yuba County Code Enforcement officers and employees of H&H Trenching, Inc., aided by Marysville Police, City Councilmembers Dale Whitmore and Don Pettigo, destroyed the habitation in Hollywood Trailer Park in which Raelynn had lived for eight years. The day before, Raelynn and her partner Bryan Lee Brown rented a small U-Haul truck and brought it to the Hollywood Park encampment. The destruction of the camp was already underway. Frantic residents immediately descended on the U-Haul, throwing whatever they could gather up before it was bulldozed and loaded in to dump trucks operated by Defendant H&H Trenching. The U-Haul made repeated trips back and forth from the camp to the top of the levee where items of personal property  belonging to those being evicted were deposited. Consistent with her years of service to the homeless community, Raelynn's priority was to save the possessions of her neighbors rather than her own. Consequently, nearly all of her personal belongings and

- 19 -

thousands of items jointly owned with Mr. Brown, were lost. She sues on behalf of herself and all similarly situated individuals.

41.     Plaintiffs **BILLY JOHN REID**  and **JOLENE REID** became homeless -- as did so many others -- as the result of the loss of a job and the difficulty of finding alternative employment**.** As the local "Marysville Appeal- Democrat" reported on September 3, 2016, "The descent into homeless began for Billy and Jolene Reid when they company they worked for in Oregon closed in 2012. He was a licensed journeyman plumber and she was a manager."

42.     Moving to California in search of work, they were briefly employed at Lovey's Landing in Meridian before the jobs dried up and they slept in their small trailer in a Walmart Parking Lot in Yuba City until they learned about Hollywood Park. In September, 2016, a fire broke out and the Reid's four dogs ran away. While searching for them, the Reid's camped at East Ellis Lake with a few bags of belongings. Billy's truck having been destroyed in a fire, the Reids had no choice but to return to the Hollywood Trailer Park encampment where they lived until October 16, 2016, when their campsite was destroyed along with everything in it.

43.     As the excavators and bulldozers ripped into the community's makeshift structures and tents, four dogs belonging to Plaintiffs barked and cried, although at no time did they ever pose any risk of physical harm to Marysville Police who nevertheless pointed guns and taser threatening to kill "Sassy", "Annie Oakley", "Stains" and "Lilly." As a result of the "clean-up," the Reids lost virtually all of their possessions. They sue on behalf of themselves and all similarly-situated persons.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

   

44.     Plaintiff **CRYSTAL MOTLEY,** currently living in her mother's garage, and Plaintiff **MICHAEL ELLIOT** lived in a trailer for three years –with permission of the owner--on a privately-owned portion of the Thorntree encampment ("The Jungle").  Before becoming homeless, Crystal owned her own home in Gridley, California. In the year 2000 Crystal began a long descent into post-traumatic stress when her 21-year old brother died of an apparent drowning. She became homeless and remained on the streets until 2013 she went to Thorntree and later met Michael.

45.     On or about February 2016, the area became flooded and Michael and Crystal awoke to find themselves waist-deep in water. Swimming desperately, Crystal would have perished but for the aid of her two dogs, big and strong enough to pull her to safety. As they waited for the flood waters to recede, Crystal and Michael learned that officials were already destroying vehicles and items of personal property. Ultimately, although they hurried back to the trailer, they were physically prevented from retrieving the RV which was ultimately destroyed along with everything in it including irreplaceable family photographs and heirlooms, original, autographed Red Skelton paintings, jewelry as well as hundreds of items of clothing, appliances, tools, camping equipment, pillows and blankets and other personal property worth thousands of dollars.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

 

46.     Plaintiffs **STANLEY EXTEIN** and his wife **SUSAN EXTEIN** lived at the Thorntree encampment, more commonly known as "the Jungle" for seven years beginning in the year 2000.  Before becoming homeless, Stanley, originally from Erie, Pennsylvania, had been in the construction trades as a roofer. After suffering a work-related injury, he was discharged from his employment and found it increasingly difficult to find gainful employment. Eventually, he and his wife Susan came to Thorntree with their three dogs. On or about January, 6, 2017, County and City officials led into Thorntree a procession of homeless persons who had previously been evicted from Horseshoe and Hollywood and had been forced onto and then flooded out from two Sleep Zones near the northwest corner of Marysville. Less than 24 hours later, Marysville Police ordered everyone in Thorntree to leave as the area was threatened with flooding. Later, Thorntree residents would learn that early flood warnings had been provided to Marysville's downtown merchants; no such warnings were ever provided to the homeless. As the floodwaters receded, the Exteins returned to Thorntree to see what remained of their many possessions but were ordered by Marysville police, at threat of arrest, to leave immediately. Shortly thereafter, the entire camp was bulldozed and the Exteins lost everything. They sue on behalf of themselves and all others similarly situated.

47.     Plaintiffs **ANNETTE SKEEN, DICK VEIT, DENNIS OWENS, DERECK DEMPSEY, CARRIE ANTRAPP,** and **WILBUR BARTHOLOMEW** lived variously and at different times at the Avondale, Boki Temple, Thorntree, Horseshoe, Upper Hollywood and the

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

Hollywood Trailer Park  encampments. As Defendants destroyed one encampment after the next, they each lost virtually all of their personal possessions.

48.     Plaintiffs and each of them have never renounced rights to their property. Plaintiffs and Plaintiff Class have never signed waivers of their property interests. In fact, many members of Plaintiff Class posted notices at their campsites specifically advising the authorities that permission to seize or destroy possessions was ***not*** permitted.  Upon information and belief, there have been no administrative hearings regarding the forfeiture of Plaintiff's property. There has been no claim that the property was derived from an illegitimate source of income or the product of any crimes. Property was seized and destroyed without any administrative hearing or criminal conviction.

49.     Each of the named Plaintiffs lost thousands of dollars worth of personal possessions as well as irreplaceable family heirlooms, documents, photographs, keepsakes, works of art, clothing, bedding and medical items as did the vast majority of members of the proposed Plaintiff Class. Named Plaintiffs as well as members of the propsed class previously prepared itemizations of lost property and descriptions of the destruction of the encampments and the impact of that destruction has had upon them in all respects and shall present proof thereof.

50.     Plaintiffs **MARYSVILLE HOMELESS UNION** and **CALIFORNIA HOMELESS UNION /STATEWIDE ORGANIZING COUNCIL** are unincorporated associations of homeless persons and their supporters who seek to organize, advocate, serve and provide collective bargaining and legal representation on behalf of homeless persons.

**DEFENDANTS**

51.     Defendant **City of Marysville** is a charter city and a municipal corporation organized under the laws of the State of California with the capacity to sue and be sued. The departments of the City of Marysville include the Marysville Police Department and Community Development Department, employees of which, including Defendants Sachs, Samayoa, Borsden

and Whitmore, have engaged in the acts constituting the violations of Plaintiffs' rights alleged in this action.

52.    Defendant **Yuba County** is a California County organized under the laws of the State of California with the capacity to sue and be sued. The departments of Yuba County include the Yuba County Sheriff's Department and Code Enforcement Division, employess of which, including Defendants Monaco, Clarke and Strang, have engaged in the acts constituting the violations of Plaintiffs' rights alleged in this action.

53.    Defendant **Yuba County Water District** is a county water district organized under the laws of the State of California with the capacity to sue and be sued, the employees of which have engaged in the acts constituting the violations of Plaintiffs' rights alleged in this action.

54.    Defendant **H&H Trenching, Inc.** is a California corporation with the capacity to sue and be sued, the employees of which have engaged in the acts constituting the violations of Plaintiffs' rights alleged in this action.

1

2

3

4

5

# Confusion for homeless in Marysville, Yuba County

6

**Eric Vodden**
**Special to The Union**
March 24, 2016

7

 Comments (0)

8

Two different homeless action plans — Yuba County's code enforcement measures to
immediately shut down homeless camps and Marysville's separate plan to serve eviction
notices — are causing some confusion over who has to leave and when.

9

10

Yuba County is citing health and safety code violations in removing homeless camps from
areas near the Simpson Lane bridge and in an area near Avondale Avenue in Linda.
People in those encampments are being told they have to leave on the spot because of
concerns over the presence of garbage and sewage.

11

12

But under the Marysville City Council's action last week, homeless camps on city-owned
property outside the city, including most of the Hollywood Trailer Park, will be served 30-day
eviction notices. They will have the right to a court process to fight their removal.

13

14

Officials acknowledge the two separate actions last week resulted in confusion among the
homeless and those who support them.

15

16

Also lost in the confusion is what officials say are local efforts to find temporary housing for
those being displaced from their camps.

17

18

"We are certainly making every effort to work with them and make sure that services are
provided to those who are moving out of the encampments," said Yuba County spokesman
Russ Brown. "For whatever encampments are served with notices, there will be services
offered for help in finding permanent housing."

19

20

The City Council last week approved moving forward with serving eviction notices on city-
owned land in danger of being inundated by rising rivers. Public safety and property liability
were the reasons given for the notices.

21

22

"I think the initial shock was people thinking we weren't thinking about folks' well-being,"
Mayor Ricky Samayoa said Tuesday. "Our job is to secure the property. It's in a flood plain.

23

24

"But it's not an immediate eviction, and they have their legal rights so can be represented as
they want."

25

26

27

28

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

1

2

3

4   People not leaving after 30 days will be served with unlawful detainer complaints, but could choose to fight the eviction in Yuba County Superior Court.

5   Marysville Police Chief Aaron Easton sad Tuesday city eviction notices have not yet been served. Initial discussions had those notices being served by Yuba County sheriff's

6   deputies, but Easton said it will instead be done by city employees.

7   No date has yet been determined when notices will be served, he said, though he said it could be as early as this week.

8

9   Along with most of Hollywood Trailer Park, encampments in an area near the city sewer ponds in Beckwourth-Riverfront Park, just east of the E Street bridge and in Thorntree subdivision to the north are to be targeted.

10

11   "The important part is that we are also working with (Yuba County administrator) Robert Bendorf and the group they have created to try to find ways for temporary housing with vouchers and other means," Easton said.

12

13   But he also said the serving of eviction notices won't be delayed to allow more time to plan for that housing.

14   "The city feels compelled to move forward with its property rights," Easton said.

15   Brown said county health and human services representatives and members of homeless advocacy groups are visiting encampments to talk about housing options.

16

17   *Eric Vodden is a reporter for the Marysville Appeal-Democrat.*

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

1/23/2018

Homeless head for 'The Jungle' - Appeal-Democrat: News

# Homeless head for 'The Jungle'

By Kirk Barron/kbarron@appealdemocrat.com | Posted: Tuesday, November 15, 2016 7:17 pm

Law enforcement officials in Yuba-Sutter have noticed a slight increase in homeless people spreading into other areas in the weeks since a collaborative effort between Marysville and Yuba County cleared out homeless encampments in the area of the former Hollywood Trailer Park.

Marysville Police Chief Aaron Easton said the largest increase is in the area known as "The Jungle" or "Thorntree" in the area of Binney Junction in north Marysville. While no date has been set to remove the homeless camps in "Thorntree," officials say that area will be cleared in the near future.

Patrol officers have noticed a slight uptick in homeless people around town, but the department has not compiled any statistics on the matter, Easton said.

"We have reports from 80 to 150 people staying in Thorntree, which is a significant increase from last summer," Easton said. "That's where we've seen the main change, not so much in the city."

MFD conducted some nuisance abatement to tow some illegal vehicles out of Thorntree but is waiting on the regional effort before conducting a similar enforcement action as took place in the Hollywood area and the area known as the "Horseshoe" at the confluence of the Yuba and Feather Rivers.

Union Pacific acted independently of the regional effort to address the issue and cited several dozen people for misdemeanor trespassing on property owned by the railroad. Easton said he called Union Pacific afterward to inform them of the regional efforts and informally request them to waive the citations. A message left with Union Pacific was not returned.

Sutter County Undersheriff Jeff Pierce said there has been a small increase of homeless people crossing over the Feather River, but the number of complaints the Sheriff's Department has received has been small.

"There's been an influx, but it's not as gigantic as you'd think it would be," Pierce said.

Sutter County has been involved in the regional task force assembled to coordinate the response to the homeless camps and provide services that address the causes of homelessness, Pierce said.




## Temporary respite site

Temporary respite sites are now open at the north end of Riverfront Park in Marysville, Tuesday, Nov. 15, 2016.

https://www.appeal-democrat.com/news/homeless-head-for-the-jungle/article_4f0a57f3-3cab-51e6-bc78-fd6709a47a08.html?mode=print

1/2



CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

11/26/2018                                                   Homeless head for 'the Jungle' - Appeal-Democrat News

"We're trying to come up with some ideas how to get these people who need help, help," he said.

There have been reports of several camps appearing near the Marysville Raceway Park in Linda, and some have expressed concern the homeless camps might move south in the river bottoms toward Star Bend, said Yuba County sheriff's spokesperson Leslie Carbah.

The department is reaching out to farmers about how to deal with any camps that form on their property, Carbah said.

"We recommend they call us right away, and we are trying to make contact immediately," Carbah said. "We want to address the issue as soon as possible."

**Getting help**

The 14Forward temporary housing project has drawn interest from other counties and cities interested in duplicating its success. The project joins housing and services into a package that has helped people escape homelessness.

Yuba County Homeless Project Manager Chaya Galicia said the 22 tiny houses have 32 residents as of Tuesday and have served 64 people since opening in July. Of those, eight secured permanent housing and six found jobs.

Three military veterans have stayed at 14Forward. One found permanent housing and two are working through the U.S. Department of Housing and Urban Development's Veterans Affairs Supportive Housing program to attain housing vouchers, Galicia said.

Several other people staying at 14Forward began using behavioral health, alcohol, drug and rehab services.

An employment team that includes One Stop, Rush Personnel, The Plus Group, Department of Rehabilitation and the Economic Development Corporation are working with the program's residents to identify jobs they might be interested in and polishing skills to help them gain employment, Galicia said.

Galicia said a point-in-time annual homeless count is planned for Jan. 25, and there will be a regional conference on homelessness on Feb. 16 and 17.

Marysville has created two "temporary respite sites" at the north end of Riverfront Park near 14Forward where people are legally allowed to spend the night. The two sites are open on alternating nights and are frequently patrolled to ensure nobody sets up camp there.

The city is planning on putting portable toilets at the sites, which are side-by-side, but as of Tuesday afternoon no toilets were there. Marysville City Services Director David Lamon said the toilets should be there soon.

CONTACT Reporter Kirk Barron at 749-4796.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

1
2
3
4
5
6
7
8



9
10
11
12

# After clearing out Horseshoe area, next up is the old Hollywood Trailer Park

■ Officials envision spot as a draw for recreation

13

Story    Comments                                      Print    Font Size:

14

15    Posted: Monday, September 26, 2016 7:12 pm | *Updated*
      *10:18 pm, Mon Sep 26, 2016*



16    By Kirk Barron/ kbarron@appealdemocrat.com

17    More than 100 volunteers filled four 40-cubic-yard
      dumpsters with debris left behind by people living in the
      "Horseshoe" area near the confluence of the Yuba and
      Feather rivers. That was during the 19th annual Yuba
      River Cleanup on Sept. 17.

18

19    The four dumpsters brought the total number removed
      from the area to 49 since code enforcement actions
      pushed out an estimated 49 people from the area ahead
      of a sewer pipeline construction project on July 15.

20    Kirk Barron/Appeal-Democrat

### Homeless on the river

21    More work remains to be done to return the land to its
      previous state and make it safe for recreation to return to
      the area, but Marysville, Yuba County and a network of

      The Hollywood Trailer Park is home to a large population of
      homeless people who have set up camp on the edge of
      Marysville Tuesday, Sept. 22, 2015.

22    private service providers are getting ready to move
      people out of a second large homeless camp on city-
      owned property, City Councilman Dale Whitmore said.

23                                    Buy this photo    Marysville will begin its effort to move people out of the
                                                        area at the site of the former Hollywood Trailer Park

24    along the north bank of the Yuba River between the
      Marysville and Simpson Lane during the week of Oct. 10 to 14. Code enforcement will begin the tear-down on Oct.
      17.

25
26    "We're going to be asking and telling people to leave, then we're going to try to figure out how we're going to clean
      everything up," Whitmore said. "We're not quite sure how that's going to happen yet."

27
28

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

1

2

3  Whitmore said he envisions turning the land into parks similar to the Feather River Parkway in Yuba City, Bidwell Park in Chico and Discovery Park in Sacramento.

4  "Marysville can step up to the plate and take this land that's currently being used for sewer ponds and homeless camps and turn it into someplace where families are welcome," Whitmore said.

5  Prior to the Horseshoe encampment closure in July, three large homeless camps sat on city-owned property.

6  According to a survey of the camps released in June, 49 people lived in the Horseshoe area. 32 people lived in Hollywood and 31 people lived in the Thorntree area to the west of Binney Junction.

7  Some of that property was owned by the city but outside of the city limits, raising questions about which jurisdiction was responsible for enforcement. Whitmore pushed for the areas to be cleaned up, and concerns over liability, environmental and public health ultimately led to the clean-up efforts, Mayor Ricky Samayoa said.

8

9  "During the Horseshoe clean-up (on Sept. 17) we found a burned-out mobile home that was just left there and was just waiting to be carried away by the river," Samayoa said.

10  **Preparing for the move**

11  Yuba County has already begun outreach efforts in Hollywood to answer questions and inform the people living there what services are available to them, and an informational town hall meeting for the homeless is scheduled for 12:30 p.m. Oct. 5 at St. John's Episcopal Church in Marysville.

12  Yuba County Homeless Project Manager Chaya Galicia said the most common question she has heard is, "Where do we go?"

13  The outreach team has a menu of services that people can use to find help that they are eligible for, however, it is difficult to address everybody's needs. Galicia is working with other stakeholders to create a coordinated entry project that would help tailor services to an individual's needs but it is not yet complete.

14

15  "It's really an individual, case-by-case situation," Galicia said. "That's the only way it's going to work, because there's no one-size-fits-all, no magic wand, that will work for everybody."

16  Yuba County and its partners created 14Forward, a short-term housing solution with intensive on-site case-management, for people who wanted to become self-sufficient again. It opened the same day the Horseshoe camp was closed, and 37 people have taken advantage of the service, Galicia said.

17  At 14Forward, people are connected with services that help with employment, housing, behavioral health and substance abuse, Galicia said.

18

19  Three residents of 14Forward have found jobs and another has a job lined up pending a background check; one couple found permanent housing and another couple is set to move into permanent housing on Oct. 1; three veterans are being connected to veteran's services; two people have enrolled in college and three are working on their GEDs, Galicia said.

20  "You can see the change in people's faces from where they were to where they are now," Galicia said.

21  Galicia said space is being saved at 14Forward for the people moving out of Hollywood, but she knows some people are not ready to accept the help. Some of the people who moved out of the Horseshoe area did not utilize services.

22

23  Marysville Police Department Chief Aaron Easton said he did not see a noticeable increase in homeless population within the city limits after the Horseshoe closure, but there appeared to be a migration into other camps in the area.

24  "The area known as Thorntree (west of Binney Junction) seemed to have the biggest increase," Easton said. "We haven't done a study to confirm that with data, but it seems to be the case. We've gotten calls from people in the camp and residents near it."

25

26  The Thorntree area will be subject to similar code enforcement actions that cleared out the Horseshoe area and will soon take place in the Hollywood area, although a date has not been set.

27

28

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

**FIRST CAUSE OF ACTION**
**(Right to be protected from Cruel or Unusual Punishment under the Eighth Amendment to Constitution of the United States; California Constitution Art. 1 §17, State-Created Danger 42 U.S.C. §1983 )**

55.   Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 54 as though fully set forth herein.

56.   Defendants, and each of them, by  and through their respective agents and employees have subjected and will continue to subject Plaintiffs to laws that criminalize their status as homeless persons inasmuch as the conduct proscribed by Defendants' policies, practices and conduct is unavoidable when adequate housing is not affordable or being made available.

57.   Defendant's policies, practices and conduct were willful and wanton and violated the ban against cruel and unusual punishment pursuant to Eighth Fourth Amendment to the United States Constitution, Article I, § 17 of the California Constitution and in violation of 42 U.S.C. § 1983 by destroying virtually all of the habitations and  personal property belonging to homeless persons and exiling them into bitterly cold weather after seizing and destroying tents, structures, tarps, clothing, bedding, blankets and other belongings used for warmth and survival. Under color of law, Defendant inflicted cruel and unusual punishment on Plaintiff n violation of their right to be secured against cruel or unusual punishment.

**SECOND CAUSE OF ACTION**
**(Fourth Amendment, California Constitution Art. 1 §13 (Right to Be Secure from Unreasonable Seizures 42 U.S.C. §1983)**

58.   Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 57 as though fully set forth herein.

59.   Defendants and each of them violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant and often under threat of arrest if Plaintiffs attempted to retrieve the property before it was crushed by the skip loader. Defendants violated Plaintiffs' rights under the Fourth

Amendment of the United States Constitution and Article I, Section 13 of the California

Constitution to be secure in his property, free from an unreasonable, warrantless invasion of their

living quarters and the seizure of items of personal property which was destroyed without any

effective notice or pre-deprivation or post -deprivation opportunity to be heard.

## THIRD CAUSE OF ACTION
**(Conspiracy to Interfere With Civil Rights, 43 U.S.C. 1985(3))**

60.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through

59 as though fully set forth herein.

61.     As described above, Defendants and each of them did conspire among themselves

for the purpose of depriving the homeless residents of the equal protection of the laws as well as the

equal protection, privileges and immunities of the law and, in furtherance of said conspiracy, did

deprive Plaintiffs of their civil rights.

## FOURTH CAUSE OF ACTION
**(Denial of Constitutional Denial of Constitutional Right to Due Process of Law and
Protection from State-Created Danger: Fifth Amendment, Fourteenth
Amendment, California Constitution Art.1, §17.)**

62.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through

61 as though fully set forth herein.

63.     By seizing and destroying Plaintiffs' property without providing a pre-deprivation or

post-deprivation hearing or any chance whatsoever to address the deprivation of property, and then

arbitrarily treating it as garbage, Defendants and each of them engaged in a mass-scale deprivation

and violation of Plaintiffs' Fourteenth Amendment right to due process. As a direct result of

Defendant's above-described policies, practices and conduct, Plaintifffs have suffered irreparable

harms and has been exposed to an increased risk of suffering physical, mental, emotional and other

harms as the result of the affirmative actions of the Defendants in creating increased risk of harm

and danger arising from the displacement of Plaintiffs from the encampments and the resulting

forced exile into circumstances where they was exposed to the elements owing to the destruction of his habitation as well as suffering hunger, pain and suffering and severe emotional distress.

## FIFTH CAUSE OF ACTION
**(Denial of Equal Protection of the Laws; Fourteenth Amendment, California Constitution, Art. 1, §7)**

64.  Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

65.  Defendants' policies, practices and conduct were intended and designed to single out homeless people and had the purpose and effect of depriving homeless people of their property without due process of law and of reducing them to the level of nomads reduced to carrying their few belongings on their backs or pushing them along resentful streets in shopping carts. These policies and actions were and are based on  animus towards this disfavored group and lacked a rational relationship to any legitimate governmental interest. In adopting and implementing these policies and practices with the intent to harm and disadvantage homeless persons, Defendants and each of them violated the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983 and Article 1, Section 7 of the California Constitution.

## SIXTH CAUSE OF ACTION
**(First Amendment to the Constitution of the United States; Article I, Section 2(a), Constitution of the State of California; Intrusion into Private Affairs, Right to Privacy; Restriction on the Right to Free Speech, To Peaceably Assemble and Petition the Government for a Redress of Greivances.)**

66.  Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 65 as though fully set forth herein.

67.  Defendants have confiscated and destroyed paper, cardboard, paint, pens, pencis, brushes, writing implements, signs and other materials used, among other things, to create protest signs and otherwise engage in protected free speech in violation of  Free Speech and Free Press rights as guaranteed under the Constitutions of the United States and California.

68.     Defendant violated Plaintiffs' rights to privacy in that Plaintiffs had a reasonable expectation of privacy in their habitations and the contents thereof which Defendants breached by intentionally intruding upon those premises in a manner highly offensive to a reasonable person. Furthermore, in the course of seizing Plaintifffs' personal property prior to its disposal, Defendants exposed Plaintiffs' belongings, including those of a deeply personal nature, to public view.

69.     By erecting signs in Downtown Marysville that encourage persons not to donate to persons in need on the streets of Marysville, Defendant City of Marysville is in violation of Plaintiffs' First Amendment rights to request the financial and other assistance of others.

## SEVENTH CAUSE OF ACTION
### (False Imprisonment)

70.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 69 as though fully set forth herein.

71.     Plaintiffs were wrongly confined to designated areas including but not limited to Sleep Zones and flood planes and generally deterred from being upon the streets of Marysville by Defendants. During the destruction of the encampments and their personal possessions, Plaintiffs were confined to within the range of armed City and County officers who physically prevented them from accessing and salvaging their habitations, vehicles and personal property items.

## EIGHTH CAUSE OF ACTION
### (Trespass to Chattels)

72.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 71 as though fully set forth herein.

73.     At all relevant times, Plaintiffs owned, possessed, and had a right to possess all property seized and destroyed by Defendants. Defendants intentionally and substantially interfered with Plaintiffs' property by, taking possession of his possessions, preventing Plaintiffs from having access to his property, and finally destroying their property

### NINTH CAUSE OF ACTION
#### (Conversion)

74.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 73 as though fully set forth herein.

75.     Defendants intentionally and substantially interfered with Plaintiffs' property by permanently depriving them of and destroying thousands of items of personal property.

### TENTH CAUSE OF ACTION
#### (Intentional Infliction of Emotional Distress)

76.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77.     Defendants' conduct was outrageous and undertaken with reckless disregard of the high probability that Plaintiffs would suffer severe emotional distress, knowing that they were present when the conduct occurred. Plaintiffs suffered severe emotional distress with physical symptoms including sucicidal ideations, fright, extreme anxiety, anger, frustration, helplessness and worthlessness and Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress in this manner.

### ELEVENTH CAUSE OF ACTION
#### (Negligent Infliction of Emotional Distress)

78. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 77 as though fully set forth herein.

79.     Defendants' conduct fell below the standard required of a landlord as described above and thereby caused Plaintiffs to suffer serious emotional distress with physical symptoms as discussed above.

### TWELFTH CAUSE OF ACTION
#### (Negligent Infliction of Emotional Distress: Bystander)

80.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 79 as though fully set forth herein.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

81. Plaintiffs ssuffered serious emotional distress as a result of perceiving the human suffering wrought by the seizure and destruction of personal items belonging to members of the homeless encampments, including the destruction of items of personal property belonging to family members,  the demolition of the encampments, and the forced dispossession of family members and members of the community to whom Plaintiffs were so close as to constitute for all intents and purposes, family members.

## THIRTEENTH CAUSE OF ACTION
### (Negligence)

82. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 81 as though fully set forth herein.

83. Defendants owed Plaintiffs a duty of care that Defendants breached by evicting Plaintiffs from the encampments, seizing and destroying their property and thereby, increasing the risk of harm by depriving them of what little shelter and community they had laboriously constructed in the face of Defendants' failure to humanely and effectively address the plight of homeless persons and its failure to confront the crisis in housing afflicting Plaintiffs and thousands of other poor, working class residents of Marysville.

## FOURTEENTH CAUSE OF ACTION
### (Intentional Misrepresentation; Fraud; Detrimental Reliance; Promissory Estoppel)

84. Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 83 as though fully set forth herein.

85. Defendants made false representations to wit, that bathroom, shower and other sanitary facilities would be provided at homeless encampments while at the same time, promising housing assistance to those displaced and dispossessed in the "clean-ups" when all along Defendants were colluding and conspiring to destroy the encampments altogether, and, thus knew that the representations were false when Defendants made the or that they were made recklessly and

without regard for their truth; that Defendant intended that Plaintiffs rely on the representation sso as to render them falsely reassured such that he refrained from making other plans to find alternative housing and from organizing the camp community in advance to resist the camp's destruction which was to follow and were, thereby, harmed.

86.     Defendant City of Marysville falsely held out the promise -- publicly announced in local media by Marysville Mayor Ricky Samayoa but disregarded six months later -- on which Plaintiffs reasonably relied, of due process and pursuant to a legal eviction process that would have given Plaintiffs an opportunity to obtain legal counsel or otherwise defend unlawful detainer actions in court.

## FIFTEENTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)

87.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 86 as though fully set forth herein.

88.     Defendants seized and destroyed thousands of hand tools, power tools, pieces of machinery, motor vehicles, recycleables, gardening materials, cooking materials, building materials, books, manuals, technical guides, business journals, professional papers including licenses, diplomas, educational and vocational certificates as well as Social Security Cards, official pieces of identification, Drivers Licenses, educational and vocational training materials belonging to Plaintiffs thereby interfering with possible future employment, self-employment, maintenance and establishment of business enterprises or other legal, income-generating enterprises and activities. In so doing, Defendants and each of them committed tortious interference with Plaintiffs' prospective economic advantage.

## SIXTEENTH CAUSE OF ACTION
### (Defamation)

89.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 88 as though fully set forth herein.

90.     Defendants made numerous false public statements to the effect that Plaintiffs that members constituted a public health hazard, falsely claiming that they were deliberately contaminating the land with human waste, garbage and other debris; that they represented a threat to public safety and were disproportionately responsible for crime, drugs, devaluation of local businesses and the like. The false statements—in public meetings, in the media, official publications and by word of mouth—were injurious *per se* to the reputations of Plaintiffs and were used as a pretext to justify the destruction of the encampments and the personal belongings of those who lived there.

91.     Defendants made no effort to make any individualized determinations whether any particular resident of any encampment was engaging in objectionable conduct and ignored efforts of the residents to keep the encampment clean and orderly. Instead, Defendant simply vilified the entire community.

### SEVENTEENTH CAUSE OF ACTION
**(Violation of the Federal Americans With Disabilities Act; Califorinia Fair Employment and Housing Act) 42 U.S.C. § 12101 (Amended Americans With Disabilities Act);  Unruh Act; California Civil Code §§ 54 – 55.2**

92.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

93.     In doing the acts complained of, Defendants deprived Plaintiffs of their rights under the Americans With Disabilities Act of 1990 and the Rehabilitation Act of 1973 to be free of discriminatory treatment based on disability or perceived disability. Defendants had, at the least, a conscious disregard of the risk of infringing on the rights of people with disabilities as it was a plainly obvious consequence of the destruction of the encampments that personal mobility aids and other accessibility tools would be located in close proximity to where disabled individuals live and, therefore, would be destroyed.

94.     By seizing and destroying property belonging to Plaintiffs, including mobility and

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; *Brigitte Butcher, et al. v. City of Marysville, et al.*

other assistive implements, devices and equipment, Defendants violated Plaintiffs' rights under the Unruh Act and California Civil Code §§ 54-55.2 which provides, *inter alia*, that "individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings […] public facilities, and other public places." Deprived of these critical assistive devices, Plaintiffs with disabilities were effectively barred from the full and free use of the streets, sidewalks and the like and suffer a continuing harm in the nature of a specie of false imprisonment inasmuch as they are now restricted in their free movement from place to place.

## INJUNCTIVE RELIEF

95.     Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 94 as though fully set forth herein.

96.     A real and immediate difference exists between Plaintiffs and Defendants regarding Plaintiffs' rights and Defendants' duty owed to Plaintiffs to protect Plaintiffs' personal property present on land owned or controlled by Defendants City of Marysville and County of Yuba. Defendants' policies and actions represent a continuing violation of Plaintiffs' constitutional, statutory and human rights which have and will continue to result in irreparable injury to Plaintiffs.

97.     There is no plain, adequate or complete remedy at law to address the wrongs described herein. Defendants have made it clear that they intend to continue these practices of demolishing homeless encampments, confiscating and immediately destroying the property of homeless individuals without a warrant, without notice, and without a hearing. As has been shown, they wil continue to use means that will almost certainly at some point produce physical injury and loss of life if not by way of bulldozers, than by way of the state-created increased risk of scattering unsheltered human beings across and beyond the County as the winter cold and rains approach. Unless restrained by this Court, Defendants will continue to implement this policy and practice.

98.     An actual controversy exists between Plaintiffs and Defendant in that Defendant's

- 39 -

agents and employees have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

99.      Defendants' acts alleged above violate established constitutional rights of Plaintiffs. Defendant could not reasonably have thought that the conduct of its agents and employees in seizing and destroying Plaintiffs' property was lawful.

100.     As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have and will continue to suffer damages through injury to their person and the loss of their habitations and personal property, including bedding, clothing, bedding, medication, tents, tarpaulins and other makeshift shelters, carts, tools, personal papers, family heirlooms, I.D., medicaitons, official documents, letters and other possessions, stripping them of these items.

**WHEREFORE**, Plaintiffs pray as follows:

1. For a temporary restraining order, preliminary injunction and permanent injunction, enjoining and restraining defendants from engaging in the policies, practices and conduct complained of herein;

2. For a mandatory injunction commanding Defendant City of Marysville and Defendant Yuba County to declare a Shelter Crisis pursuant to SB 850, Chapter 48, Statues of 2018 and California Government Code § 8698.2 and to immediately make available, pursuant to said Declaration of Shelter Crisis, all appropriate City and County-owned buildings to those who would otherwise be without shelter;

3. For a declaratory judgment that Defendant's policies, practices and conduct as alleged herein, violate Plaintiffs' rights under the United States Constitution, the California Constitution and the laws of California;

4. For an order certifying the injunctive relief class pursuant to F.R.Civ.P. 23(b)(2);

5.  For damages awarded to all class members whose property was destroyed by Defendants in an amount to be determined according to proof but in no event less than $4,000 per incident pursuant to Cal. Civ. Code §§ 52, 52.1 and Cal. Government Code § 815.6.;

6.  For costs of suit and attorney fees as provided by law;

7.  For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: October 15, 2018

Respectfully submitted,

/s/ Anthony D. Prince

_____

Anthony D. Prince
Law Offices of Anthony D. Prince,
General Counsel for
California Homeless Union/Statewide
Organizing Council and
Attorney for Plaintiffs