1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   BRIGITTE RAELYNN BUTCHER, BILLY        No.  2:18-cv-02765-JAM-CKD
    JOHN REID, JOLENE ANN REID, SUSAN
10  EXTEIN, STANLEY EXTEIN, MICHAEL
    ELLIOT, CRYSTAL MOTLEY, DICK VEIT,
11  DENNIS OWENS, DERECK DEMPSEY,          **ORDER GRANTING IN PART AND**
    CARRIE ANTRAPP, WILBUR BARTHOLOMEW,    **DENYING IN PART CITY OF**
12  ANNETTE SKEEN, individually and on     **MARYSVILLE'S MOTION TO**
    behalf of themselves and all others    **DISMISS**
13  similarly situated; MARYSVILLE
    HOMELESS UNION, CALIFORNIA HOMELESS
14  UNION/STATEWIDE ORGANIZING COUNCIL,

15           Plaintiffs,

16      v.

17  CITY OF MARYSVILLE, a municipal
    entity; MAYOR RICKY SAMAYOA, CITY
18  COUNCILMEMBER DALE WHITMORE, CITY
    COUNCILMEMBER DON PETTIGO, CITY
19  ATTORNEY BRENT BORSDEN, CHIEF OF
    POLICE CHRIS SACHS; COUNTY OF YUBA;
20  YUBA COUNTY CODE ENFORCEMENT
    DIVISION; YUBA COUNTY CODE
21  ENFORCEMENT DIVISION MANAGER JEREMY
    STRANG; YUBA COUNTY CODE
22  ENFORCEMENT OFFICER TRACEY CLARK;
    CODE ENFORCEMENT OFFICER CHRIS
23  MONACO, individually and in their
    official capacities; H&H TRENCHING
24  CO.; DOES 1-100,

25           Defendants.

26

27      In October 2018, Brigitte Raelynn Butcher, along with twelve

28  other named plaintiffs ("Plaintiffs"), filed a putative class

1

action against H&H Trenching and several public-entity and public-employee defendants. One of those defendants, the City of Marysville ("the City"), filed a motion to dismiss most of Plaintiffs' claims. For the reasons discussed below, the Court grants in part and denies in part the City's motion.

The Court dismisses all Plaintiffs' Section 1985(3) and state law claims against the City with prejudice. All Plaintiffs' Fifth Amendment claims against the City will be dismissed with prejudice absent supplemental briefing from Plaintiffs demonstrating that these claims can be maintained. The Court also dismisses Plaintiff Michael Elliot's ("Elliot") and Plaintiff Crystal Motley's ("Motley") ADA and First Amendment claims against the City with prejudice.

The Court dismisses all Plaintiffs' Eighth Amendment claims against the City without prejudice. Excluding Elliot and Motley, Plaintiffs' ADA and First Amendment claims are also dismissed without prejudice.[1]

I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiffs are homeless individuals who previously lived in one of the many homeless encampments that once existed on the banks of the Yuba and Feather Rivers. Compl. ¶ 1, ECF No. 1. They bring federal and state law claims on behalf of themselves and "approximately 300-500 persons who were forcibly removed from the homeless encampments [] known as Avondale, Upper Hollywood,

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for September 19, 2017.

Horseshoe, Shad Pad, Boki Temple, Thorntree (otherwise known as 'the Jungle') and the Hollywood Trailer Park ('Hollywood')." Compl. ¶ 14.

The homeless encampments existed for over ten years at the knowledge and acquiescence of the City.  Compl. ¶ 4.  In fact, "it was common practice for Marysville police to either suggest, order and/or physically transport [homeless persons] found within the city limits" to these encampments.  Id.

In February 2016, the Thorntree encampment "became flooded." Compl. ¶ 45.  Plaintiffs, Motley and Elliot, had to swim out of the encampment to escape the flooding. Id.  When they learned that officials were "destroying vehicles and items of personal property," they tried to return to their trailer.  Id.  The officials "physically prevented [Motley and Elliott] from retrieving the RV which was ultimately destroyed along with everything in it." Id.

A month later, the City of Marysville and Yuba County, as part of a "City-County Liaison Committee," developed "a '13-step' plan to expel the homeless from encampments on City-owned property outside of the city limits."  Compl. ¶ 21.  They titled the plan, "Tasks and Timeline for Removing Unauthorized Occupants from City-Owned Lands."  Compl. ¶ 22.  The 13-step plan "assigned specific shared responsibilities to Marysville's City Services Department, the Marysville Police Department, Yuba County Sheriff's Department, Yuba County Code Enforcement and the Marysville City Attorney."  Compl. ¶21.  The plan originally aimed to remove homeless people from the encampments using trespass law.  Compl. ¶ 22.  Instead, Defendants mailed

"Notice[s] To Terminate Tenancy" to a "small percentage" of the residents. Compl. ¶ 23. Each notice was "Returned to Sender" as "Unclaimed, Unable to Forward." Id. The notices are postmarked March 29, 2016. Id. The mayor of Marysville, Ricky Samayoa, announced that if residents had not left the encampments in thirty (30) days, they would be served with unlawful detainer complaints. At which point, they "could choose to fight the eviction in Yuba County Superior Court." Compl. ¶ 24.

Thirty days passed, but neither the City or County served any of the encampment residents with the unlawful detainer complaints. Compl. ¶ 25. Rather, the Marysville City Attorney authorized Yuba County Code Enforcement to inspect the encampments "and take any appropriate action deemed necessary as a result." Compl. ¶ 26. The same day, a local paper reported that Yuba county had "received a grant to fund a 'removal project' aimed at [] removing homeless persons from the Hollywood camp." Compl. ¶ 27. In response, Hollywood Trailer Park residents posted signs "stating that permission to take or destroy their property was not granted." Id. The Hollywood residents also created signs that they later used at an October 15 protest in front of Marysville City Hall. Compl. ¶ 28. Butcher helped to organize this protest. Compl. ¶ 39.

On October 17, 2016—four days after the Marysville City Attorney authorized Yuba County's inspection, and two days after the protest—Yuba County officials and members of the Marysville Police Department posted "unsigned notices" at Hollywood Park. Compl. ¶ 29. Butcher did not see any of these notices until the next morning. Id. At that point, Yuba County officials were

4

already using bulldozers to tear down the encampment.  Id.  The
Marysville Police, alongside city and county officials, loaded
what remained into dump trunks owned by H&H Trenching.  Compl.
¶ 40.  Plaintiffs, Brigitte Raelynn Butcher, Billy John Reid, and
Jolene Reid lost nearly all of their property during the
destruction of Hollywood Trailer Park.  Compl. ¶¶ 40, 43.

Following the destruction of Hollywood Trailer Park, the
City directed Hollywood residents "to another area also
designated as a major flood zone."  Compl. ¶ 33.  This area was
commonly referred to as a "mud hole" because it "was full of
standing water."  Compl. ¶ 34.  The City partitioned the area,
creating A-Zone and B-Zone.  Compl. ¶ 33.  The City only allowed
residents to occupy A-Zone on Monday, Wednesdays and Fridays.
Id.  On Tuesdays, Thursdays, Saturdays, and Sundays, the
residents had to stay in the B-Zone.  Id.  In effect, the
residents had to switch between the two zones almost every day.
Id.  Eventually, both zones completely flooded.  Compl. ¶ 34.

Plaintiffs Stanley Extein and Susan Extein lived at the
Thorntree encampment.  Compl. ¶ 46.  In January 2017, they saw
city and county officials bring into Thorntree "a procession of
homeless persons who had previously been evicted from Horseshoe
and Hollywood and had been forced onto[,] and then flooded out
from[,] two Sleep Zones.  Id.  Less than a day later, Marysville
Police ordered everyone in the encampment to leave due to a
threat of flooding.  Id.  After the flood waters receded, the
Exteins returned to Thorntree.  Id.  Marysville Police told them,
at threat of arrest, to leave immediately.  Id.  City and County
officials later bulldozed the encampment; the Exteins lost

everything.

The Complaint summarily states that the remaining Plaintiffs, Annette Skeen, Dick Veit, Dennis Owens, Dereck Dempsey, Carrie Antrapp, and Wilbur Bartholomew, at various points, lived at each of the homeless encampments.  Compl. ¶ 47. As a result of the City's conduct, they each lost "virtually all of their personal possessions."  Id.

At no point did any of the Plaintiffs receive a pre-deprivation or post-deprivation hearing about the destruction of their personal property.  Compl. ¶ 48.

On October 14, 2018, Plaintiffs filed a putative class action against the City of Marysville, the County of Yuba, Yuba County Code Enforcement, H&H Trenching, Inc., and several public officials.  The complaint includes the following claims:

1.  42 U.S.C. § 1985(3) – Conspiracy to Interfere with Civil Rights

2.  42 U.S.C. § 1983 – Eighth Amendment

3.  42 U.S.C. § 1983 – Fourth Amendment

4.  42 U.S.C. § 1983 – Fifth and Fourteenth Amendments (Due Process)

5.  42 U.S.C. § 1983 – Fourteenth Amendment (Equal Protection); California Constitution, Art. I, § 7

6.  42 U.S.C. § 1983 – First Amendment; California Constitution Art. I, § 2

7.  False Imprisonment

8.  Trespass to Chattels

9.  Conversion

10. Intentional Infliction of Emotional Distress

6

1    11. Negligent Infliction of Emotional Distress

2    12. Negligent Infliction of Emotional Distress: Bystander

3    13. Negligence

4    14. Intentional Misrepresentation/Fraud

5    15. Tortious Interference with Prospective Economic Advantage

6    16. Defamation

7    17. 42 U.S.C. § 12101 (Americans with Disabilities Act); Cal.

8         Civ. Code §§ 52, 52.1, 54-55.2 (California Fair Employment

9         and Housing Act); Cal. Civ. Code § 2080 (Unruh Act)

10   In November 2018, the City of Marysville filed a Motion to

11   Dismiss all of Plaintiffs' claims except the Fifth Amendment Due

12   Process claim and the Fourteenth Amendment Substantive Due

13   Process claim.  Motion to Dismiss by City of Marysville ("Mot."),

14   ECF No. 4.

15

16                        II.  OPINION

17        A.   Legal Standard

18        Federal Rule of Civil Procedure 8(a)(2) requires a "short

19   and plain statement of the claim showing that the pleader is

20   entitled to relief."  A court will dismiss a suit if the

21   plaintiff fails to "state a claim upon which relief can be

22   granted."  Fed. R. Civ. Proc. 12(b)(6).  When considering a

23   motion to dismiss, the Court "must accept as true all of the

24   allegations contained in a complaint."  Ashcroft v. Iqbal, 556

25   U.S. 662, 678 (2009).  It is not, however, "bound to accept as

26   true a legal conclusion couched as a factual allegation."  Id.

27   "Unwarranted inferences" are likewise "insufficient to defeat a

28   motion to dismiss for failure to state a claim."  Epstein v.

                              7

Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

Rule 12(b)(6)'s plausibility standard "is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

B.  Judicial Notice

Federal Rule of Evidence 201(b) allows the court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is reasonably known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court grants the City's request for judicial notice, as "[m]unicipal ordinances are proper subjects for judicial notice." Tollis, Inc. v. Cty of San Diego, 505 F.3d 935, 938 n.1 (9th Cir. 2007). The Court denies Plaintiffs' request for judicial notice. The documents referenced in Plaintiffs' request are not of the type subject to judicial notice and constitute evidence outside the pleadings which the Court may not consider on a Motion to Dismiss. See Hsu v. Puma Biotechnology, Inc., 213 F. Supp. 3d, 1275, 1279-81 (C.D. Cal. 2016) (discussing the difference between requests for judicial notice and the doctrine of incorporation by reference).

C.  Analysis

1. Plaintiff's Untimely Opposition

To determine whether the Court should excuse a party's

failure to meet a court-imposed deadline, it considers four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact upon the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1261 (9th Cir. 2010). The Court finds that the reasons set forth in Plaintiffs' supplemental brief for the late filing of Plaintiffs' Opposition brief adequately demonstrate that the Court should consider Plaintiffs' untimely Opposition to the Motion to Dismiss. Supplemental Brief re [DKT 15] Minute Order ("Supp.") at 1-3, ECF No. 16. The City's request that the Court not consider Plaintiffs' Opposition is denied.

## 2. Statute of Limitations

The City argues that the Court should dismiss all of Plaintiffs Elliot and Motley's claims as time-barred. City of Marysville Reply ("Reply") at 1, ECF No. 11. The Court grants the City's motion to dismiss Elliot and Motley's Section 1985(3), ADA, and state law claims as time-barred. The Court denies the City's motion to dismiss Elliot and Motley's Section 1983 claims as time-barred, because those claims fall under the continuing violations doctrine.

Neither Section 1983 nor ADA has its own statute of limitations. Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014) (Section 1983); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1137 n.2 (9th Cir. 2002) (ADA). Rather, federal courts "apply the forum state's statute of limitations for personal injury actions." Butler, 766 F.3d at 1198. See also Pickern, 293 F.3d at 1137 n.2 (ADA).

9

California's statute of limitations for personal injury claims is two years. Butler, 766 F.3d at 1198 (citing Cal. Civ. Proc. Code § 335.1). This two-year statute of limitations also governs Elliot and Motley's state tort claims. Cal. Civ. Proc. Code § 335.1

Plaintiffs concede that, when viewed in isolation, Elliot and Motley's claims accrued outside the limitations period. Supp. at 4. They argue that this Court should nonetheless allow the claims to go forward under the continuing violations doctrine. Id. at 3-4. By Plaintiffs' account, this doctrine allows claims that would ordinarily be time-barred to proceed if the plaintiff can show those claims arose out of a "systematic policy or practice of discrimination that operated, in part, within the limitations period." Morgan v. Nat'l RR Passenger Corp., 232 F.3d 1008, 1015 (9th Cir. 2000). They also argue the Supreme Court affirmed the use of this doctrine in Morgan v. Nat'l RR Passenger Corp., 536 U.S. 101 (2002).

In fact, the Ninth Circuit's decision in Morgan, was affirmed in part and reversed in part. See id. at 105. There, the Supreme Court distinguished between "discrete discriminatory acts" and "hostile work environment claims." Id. at 110. Rejecting the Ninth Circuit's position that "the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing," the Supreme Court found that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113. In short, the continuing violations doctrine does not apply to "serial violations." Id. at 114.

On the other hand, the Supreme Court found that "[h]ostile environment claims are different in kind from discrete acts," because their "very nature involves repeated conduct." Id. at 115. Indeed, a hostile work environment claim requires a court to look at "all of the circumstances, including the frequency of the discriminatory conduct; it's severity; whether it is physically threatening or humiliating, or a mere offensive utterance." Id. at 116. Because the existence of a hostile work environment claim necessarily arises out of a series of acts, the Court found the continuing violations doctrine allowed plaintiff to "file a charge within 180 or 300 days of any act that [was] part of the hostile work environment." Id. at 118 (emphasis added).

Likewise, Elliot and Motley's Section 1983 claims against the City necessarily arise out of a series of acts. To sustain a Section 1983 claim against a municipality, a plaintiff must show that a constitutional deprivation arose out of a custom, policy, or practice. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 690-92 (1978). Like a hostile work environment claim, a claim of municipal liability necessarily requires a series of improper acts. Id. If the destruction of Elliot and Motley's property was pursuant to the City's custom, policy, or practice, the continuing violations doctrine applies.

Elliot and Motley contend that the City helped destroy their property in February 2016—a month before the City and County allegedly adopted a 13-step plan to displace homeless individuals from the encampments outside Marysville. Compl. ¶¶ 6, 45. Plaintiffs allege that this conduct—although

11

occurring before the existence of a written plan—was nonetheless part of the City's broader policy to violate their constitutional rights.  See generally Compl.  Because challenging a City's policy necessarily implicates a series of acts, this Court finds that the continuing violations doctrine applies to Elliot and Motley's Section 1983 claims.  The Court does not dismiss these claims as time-barred.

There is not, however, a "custom, policy, or practice" requirement under 42 U.S.C. § 1985(3), ADA, or state tort law.  The Court, therefore, views each of those claims as "discrete."  The continuing violations doctrine does not apply to these claims.  The Court, therefore, dismisses those claims as time-barred.

### 3. 42 U.S.C. § 1985(3)

The City argues that the Court should dismiss all Plaintiffs' Section 1985(3) claims.  Mot. at 4-5.  Section 1985(3) prohibits conspiring "for the purpose of depriving, either directly or indirectly, any person or class or persons of the equal protection of the laws."  42 U.S.C. § 1985(3).  The Ninth Circuit has explained that a Section 1985(3) claim requires plaintiff(s) to "demonstrate a deprivation of [a legally protected right,] motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting Griffith v. Breckenridge, 403 U.S. 88, 102 (1971)).  To extend Section 1985(3) "beyond race," the Ninth Circuit requires "either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting

scrutiny or that Congress has indicated through legislation that the class required special protection." Id. at 1536.

As the City argues in its Reply, Plaintiffs concede that the federal courts have not identified homelessness as a suspect classification. Reply at 1. Rather, Plaintiffs argue that a Section 1985(3) claim lies because homeless persons could make out an Equal Protection Clause claim on other grounds. Plfs.' Opp. to Def.'s Motion to Dismiss ("Opp.") at 4-5, ECF No. 9 (citing Ingraham v. Wright, 430 U.S. 651, 673-74 (1977); Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989)). While this may be true, it does not change the fact that belonging to a suspect classification is a prerequisite to pursuing a Section 1985(3) claim under Ninth Circuit precedent. Because, as Plaintiffs concede, the courts have not designated homelessness as a suspect classification, this Court finds that Plaintiffs have not stated a claim upon which relief may be granted. Further, Plaintiffs cannot cure this deficiency by amendment. The Court dismisses all Plaintiffs' Section 1985(3) claims with prejudice.

### 4. ADA

Plaintiffs did not oppose the City's motion to dismiss their ADA claim. Further, by citing only to the "Findings and Purpose" section of the statute in their complaint, Plaintiffs fail to apprise either the City or this Court of the statutory basis of the claim. See Compl. ¶¶ 92-93. Accordingly, the Court dismisses Plaintiffs' ADA claim without prejudice.

### 5. First Amendment

Plaintiffs do not clearly explain what theory they rely on for their First Amendment claims. Plaintiffs appear to be

13

making a Retaliation claim, arguing that the City destroyed their "paper, cardboard, paint, pens, pencils, brushes, writing implements and other materials used . . . to create protest signs" in direct response to the protest Butcher helped organize a few days earlier.  Opp. at 14 (citing Compl. ¶¶ 28, 67).

To state a claim for Retaliation, Plaintiffs needs to assert that the City's actions "deterred or chilled [the plaintiffs'] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." Mendocino Envtl Ctr v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999).  A defendant need not have actually interfered with the plaintiffs' First Amendment rights; an "intent to interfere" is enough.  Id.  A plaintiff may show "intent to interfere" through direct or circumstantial evidence.  Id.

Plaintiffs' Retaliation claim suffers from at least two deficiencies.  First, the alleged destruction of Thorntree in February 2016 occurred before the October 2016 protest. Therefore, the City could not have intended to retaliate against Elliot and Motley for protesting in front of City Hall.  The Court dismisses Elliot and Motley's First Amendment Retaliation claims with prejudice.

Secondly, the complaint simply does not contain any allegations that retaliation was a "substantial or motivating factor" in the City's conduct.  Plaintiffs rest their Retaliation claims on the fact that the City helped destroy Hollywood Trailer Park two days after Butcher helped organize a protest in Washington Square Park.  Compl. ¶¶ 39, 67. But they concede that "[t]he same modus operandi had been deployed at all

14

preceding homeless encampment 'clean-ups'"—"clean-ups" that had
occurred before the October 2016 protest.  The October 12 letter
from the City Attorney instructing Code Enforcement "to take any
appropriate action deemed necessary" also suggests that the
City's intent to evacuate Hollywood Trailer Park was not tied to
the October 15 protest.  See Compl. ¶ 26.

Plaintiffs fail to set forth a prima facie case for
Retaliation under the First Amendment.  The Court dismisses the
remaining Plaintiffs' First Amendment claims without prejudice.

### 6. Fourth Amendment

The City argues that the Court should dismiss Plaintiffs'
Fourth Amendment claims.  Mot. 6-7.  But Plaintiffs have
adequately pled a Fourth Amendment claim against the City for
unreasonably seizing their personal property.  The Fourth
Amendment "protects two types of expectations, one involving
'searches,' the other 'seizures.'"  Lavan v. City of Los
Angeles, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting United
States v. Jacobsen, 466 U.S. 109, 113 (1984)).  For the purposes
of a Fourth Amendment claim, "a seizure of property occurs when
there is some meaningful interference with an individual's
possessory interests in that property."  Id.  In Lavan, the
Ninth Circuit addressed the question of whether the Fourth
Amendment protects homeless individuals' unabandoned personal
property from unreasonable seizures.  Id.  It does.  Id.

The City argues that Plaintiffs failed to state a claim
under the Fourth Amendment because any warrantless seizure that
occurred was justified by either probable cause or exigent
circumstances.  Mot. at 6-7.  As an initial matter, Lavan makes

clear that a "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property." 693 F.3d at 1029. Indeed, the Court found that "by seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property." Id. at 1030. "No more is necessary to trigger the Fourth Amendment's reasonable requirement." Id.

Further, Plaintiffs sufficiently alleged that the seizure of their property was unreasonable. Again, Lavan controls. There, the Ninth Circuit recognized that "[t]he City [did] not—and almost certainly could not—argue that its summary destruction of Appellees' . . . property was reasonable under the Fourth Amendment." Id. at 1031. Plaintiffs allege the same sort of summary destruction of property here. See Compl. ¶¶ 2-3, 9, 29, 38, 40, 43, 45-46.

Finally, the City's exigency argument does not free them from the Fourth Amendment's reasonableness requirement. Exigency only excuses the government from obtaining a warrant. See Brigham City, Utah v. Stuart, 547 U.S. 398, 405-406 (2006).

Taken as true, Plaintiffs' allegations set out a prima facie case under the Fourth Amendment. The Court denies the City's motion to dismiss Plaintiffs' Fourth Amendment claims.

### 7. Eighth Amendment

The City argues that Plaintiffs have not properly pled claims under the Eighth Amendment. Mot. at 5-6. This Court agrees. As the City argues, the Eighth Amendment prohibits the infliction of cruel and unusual punishment in three ways: it

16

limits the type of punishment that can be imposed on those convicted of crimes; it proscribes punishment grossly disproportionate to the severity of the crime; and it imposes substantive limits on what can be made criminal.  Mot. at 5 (citing Ingraham v. Wright, 430 U.S. 651, 667 (1977)).  In Ingraham, the Supreme Court expressly declined to extend the application of the Eighth Amendment beyond the criminal process. Id. at 665-68.

But the City is incorrect to suggest that the Ninth Circuit's decision in Martin v. City of Boise, 902 F.3d 1031, 1048 (9th Cir. 2018) has no bearing here.  There, the Court of Appeals found that "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter."  Id.  Additionally, plaintiffs need not "await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." Id.  at 1040.  They must simply make a showing that the alleged injury is imminent. Id.

Still, Plaintiffs' allegations fall short.  Looking to the face of the complaint, only Stanley and Susan Extein appear to have standing.  They are the only plaintiffs who allege that the City blocked them from entering their encampments "at threat of arrest."  Compl. ¶ 46.  Accordingly, none of the other plaintiffs have standing to challenge the City's enforcement of this ordinance, because they have not alleged that arrest was imminent.

But even though the Exteins have sufficiently pled that

they have standing, they have not set out a prima facie case under the Eighth Amendment. First, they do not allege that the threat of arrest was pursuant to the City's enforcement of a criminal ordinance, as opposed to a legitimate attempt to keep people out of an already-flooded area. Indeed, the Exteins acknowledge that they had attempted to return to Thorntree as floodwaters were receding from the area. Id. Just as significantly, the Exteins do not allege that the City was without alternative shelters. This allegation was not contained in footnote one of the complaint as Plaintiffs argue. See Opp. at 4; Compl. ¶ 3 n.1. Although the footnote includes statistics about the number of homeless individuals that are completely unsheltered (as opposed to living in transitional housing or emergency shelters), it does not include information about the capacity of these shelters, and whether they could house the people who were without shelter at the time of the incident. See Compl. ¶ 3 n.1. In Martin, the fact that there was "a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters]" was central to the Ninth Circuit's holding. 902 F.3d at 1048 (modifications in original). Without making this threshold showing, Plaintiffs cannot avail themselves of Martin's rationale.

As currently pled, Plaintiffs do not allege an Eighth Amendment violation. This court dismisses this claim without prejudice.

### 8. Fourteenth Amendment

Both parties' briefings mischaracterize the relationship between Plaintiffs' claims under the Fourteenth Amendment: Equal

Protection, Substantive Due Process, and Procedural Due Process.
Compl. ¶¶ 62-65.  See also Mot. at 7; Opp. at 5-6; Reply at 2.
In its Motion to Dismiss, the City summarily argues that,
because homelessness is not a suspect classification and housing
is not a fundamental right, Plaintiffs' Equal Protection claim
fails.  Mot. at 6.  Plaintiffs counter that their Equal
Protection claim survives under the danger-creation doctrine.
Opp. at 5-6.

The City's argument improperly oversimplifies the Equal
Protection Clause analysis.  The Supreme Court has repeatedly
found Equal Protection Clause violations against non-suspect
classes where a defendant's class-based distinction fails
Rational Basis Review.  See Romer v. Evans, 517 U.S. 620, 631-32
(1996); City of Cleburne, Tex. v. Cleburne Living Center, 473
U.S. 432, 448 (1985).

But Plaintiffs' legal argument in support of this claim is
also incorrect.  The danger-creation doctrine does not support a
claim under the Equal Protection Clause.  Rather, it is a theory
of liability under Substantive Due Process.  Although
Plaintiffs' Opposition is misguided in its analysis, the City is
the moving party here and it simply has not shown that
Plaintiffs failed to adequately plead a cause of action under
the Equal Protection Clause.  The Court denies the City's motion
to dismiss this claim.

The City's motion does not argue that Plaintiffs'
Substantive Due process claim should be dismissed, so the Court
need not discuss the adequacy of those pleadings.  The City
does, however, argue that this Court should dismiss Plaintiffs'

Procedural Due Process claim.  Central to the City's three-sentence argument is that "Plaintiffs do not allege they were denied a hearing after the alleged removal of their property." Mot. at 7.  This is plainly false.  See Compl. ¶¶ 4, 13, 14(a), 59, 63 (alleging that the City and County denied Plaintiffs both pre- and post-deprivation hearings).  The Court denies the City's motion to dismiss Plaintiffs' Procedural Due Process claim.

### 9. State Law Claims

The City's motion argues that the Court should dismiss all of Plaintiffs' state law claims because Plaintiffs failed to comply with the Government Tort Claims Act ("TCA").  Under California law, "[a] claim relating to a cause of action . . . for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action."  Cal. Gov. Code § 911.2.  A plaintiff must allege sufficient facts to demonstrate compliance with the TCA's claim presentation requirement or an excuse for noncompliance. State v. Super. Ct. (Bodde), 32 Cal. 4th 1234, 1243-44 (2004). This Court has previously stated that "failure to allege compliance or an excuse for noncompliance constitutes a failure to state a cause of action and results in a dismissal" of the state claims.  D.K. ex rel. G.M. v. Solano County Office of Educ., 667 F. Supp. 2d 1184, 1195 (E.D. Cal. 2009).

Plaintiffs argue in their Opposition that they are excused from compliance.  Opp. at 13-14.  Their failure to allege this excuse in the Complaint is reason enough to dismiss the state law claims.  The Court nonetheless discusses each of Plaintiffs'

proposed excuses to explain why it is dismissing these claims
with prejudice.

First, Plaintiffs argue that <u>Holt v. Kelly</u>, 20 Cal.3d 560
(1978) and <u>Minsky v. City of Los Angeles</u>, 11 Cal.3d 113 (1974)
excuse individuals from TCA's claim presentation requirements
where "Defendant had caused the property to become 'dissipated'
forcing plaintiff to seek money damages in lieu of its return."
Opp. at 13. In response, the City correctly argues that these
cases only cover "claims for the specific property currently
held by the government, and/or for the value of any property the
government negligently damaged or destroyed <u>after</u> it was
seized." Reply at 4 (emphasis in original). Plaintiffs do not
allege that the City ever confiscated their property. Rather,
it was immediately destroyed on-site.

Although, at first glance, this distinction may seem
contrived, the California Supreme Court has explained that the
government's initial possession of the property is integral to
the exception. 11 Cal.3d at 121. When a plaintiff files a
claim for specific recovery of property, the claim falls outside
the TCA. <u>Id.</u> It is not a claim for "money or damages," so the
claim presentation requirement does not apply. <u>Id.</u> Both the
<u>Holt</u> and <u>Minsky</u> Courts recognized the impropriety of allowing a
government official to turn a "specific recovery" claim into
claim for "money or damages" by simply destroying the property.
<u>Holt</u>, 20 Cal.3d at 565; <u>Minsky</u>, 11 Cal.3d at 121 n.14. The
official would benefit from its own wrongdoings by bringing the
claim under the TCA, making it more difficult for the plaintiff
to recover. <u>Holt</u>, 20 Cal.3d at 565; <u>Minsky</u>, 11 Cal.3d at 121

n.14.

Here, Plaintiffs' state law claims have fallen within the TCA since their inception. The Holt and Minsky exceptions do not apply.

Plaintiffs also argue that the City is equitably estopped from asserting noncompliance with the claims statute because the City deterred the filing of a timely claim by some affirmative act. Opp. at 14. (citing Christopher P. v. Mojave Unified School Dist., 19 Cal. App. 4th 165 (1993)). But equitable estoppel, as discussed in Christopher P. and John R. V. Oakland Unified School Dist., 48 Cal.3d 445 (1993), requires more than just deterrence. The public entity also must have intended to deter plaintiff. John R., 48 Cal.3d at 170. It may be true that the City's alleged conduct had the effect of deterring Plaintiffs from meeting the TCA's claim presentation requirement. But Plaintiffs do not allege that the City intended to deter them, nor does it appear to this Court that they can. The Court, therefore, grants the City's motion to dismiss Plaintiffs' state law claims with prejudice.

## 10. Injunctive Relief

Injunctive relief is a remedy, "and not an independent claim in itself." Fratus v. Mazyck, No. 2:16-cv-0076-KJM-EFB, 2017 WL 531842 at *4 (E.D. Cal. Feb. 7, 2017). For this reason, this Court, and others, have previously found that it is premature to dispose of a plaintiff's request for injunctive relief at the motion-to-dismiss stage. Id.; Zepeda v. Tate, No. 1:07-cv-0982-SMM, 2010 WL 4977596 at *5 (E.D. Cal. Dec. 2, 2010); Cox Comm'n PCS, L.P. v. City of San Marcos, 204 F. Supp.

2d 1272, 1283 (S.D. Cal. 2002); <u>Friends of Frederick Seig Grove</u>
<u>#94 v. Sonoma Cnty. Water Agency</u>, 124 F. Supp. 2d 1161, 1172
(N.D. Cal. 2000).  The City has not given the Court a good
reason to depart from this practice.  The Court denies its
motion to dismiss Plaintiffs' request for injunctive relief.

### 11.  Supplemental Jurisdiction

Plaintiffs' state law claims are dismissed.  As such, the
City's request that this Court decline to exercise its
supplemental jurisdiction over these claims is moot.

### 12.  Fifth Amendment

The City's Motion to Dismiss does not address Plaintiffs'
Due Process claims under the Fifth Amendment.  This Court may
<u>sua sponte</u> dismiss a claim "without notice or an opportunity to
respond where the plaintiffs cannot possibly win relief."  <u>Shoop</u>
<u>v. Deutsche Bank Nat. Tr. Co.</u>, 465 F. App'x 646, 647 (9th Cir.
2012) (internal quotations omitted).

The Fifth Amendment only binds federal actors.  <u>See</u> <u>Public</u>
<u>Utilities Commission of District Columbia v. Pollack</u>, 343 U.S.
451, 461 (1952).  It does not appear to the Court that
Plaintiffs are bringing any of their claims against federal
defendants.  If either party disagrees, they may file a
supplemental brief on this issue within one week of the date of
this Order.  Otherwise, the Court dismisses Plaintiffs' Fifth
Amendment claim with prejudice.

### III.  ORDER

For the reasons set forth above, the Court GRANTS in part
and DENIES in part the City's Motion to Dismiss.  The Court

23

dismisses all Plaintiffs' Section 1985(3) and state law claims against the City with prejudice. All Plaintiffs' Fifth Amendment claims against the City will be dismissed with prejudice absent supplemental briefing to be filed within one week of the issuance of this order. The Court also dismisses Plaintiffs Elliot and Motley's ADA and First Amendment claims against the City with prejudice.

The Court dismisses all Plaintiffs' Eighth Amendment claims against the City without prejudice. Excluding Elliot and Motley, Plaintiffs' ADA and First Amendment claims are also dismissed without prejudice. If Plaintiffs elect to amend their complaint with respect to these claims, they shall file a Second Amended Complaint within twenty (20) days of this Order. The City's responsive pleading is due twenty (20) days thereafter.

IT IS SO ORDERED.

Dated: February 22, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE