UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRIGITTE RAELYN BUTCHER,
BILLY JOHN REID, JOLENE ANN
REID, SUSAN EXTEIN, STANLEY
EXTEIN, MICHAEL ELLIOT,
CHRYSTAL MOTLEY, DICK VEIT,
DENNIS OWENS, DERECK DEMPSEY,
CARRIE ANTRAPP, WILBUR
BARTHOLOMEW, ANNETTE SKEEN,
individually and on behalf of
themselves and all others
similarly situated;
MARYSVILLE HOMELESS UNION,
CALIFORNIA HOMELESS
UNION/STATEWIDE ORGANIZING
COUNCIL,

          Plaintiffs,

    v.

CITY OF MARYSVILLE,
MARYSVILLE POLICE DEPARTMENT,
RICKY SAMAYOA, BRENT BORDSEN,
COUNTY OF YUBA, YUBA COUNTY
CODE ENFORCEMENT, and DOE 1
to 100,

          Defendants.

No. 2:18-cv-02765-JAM-CKD

**ORDER GRANTING IN PART AND
DENYING IN PART THE CITY OF
MARYSVILLE'S MOTION TO DISMISS**

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION TO STRIKE COUNTY OF
YUBA'S AFFIRMATIVE DEFENSES**

    In October 2018, Brigitte Raelynnn Butcher and twelve other plaintiffs filed a putative class action against H&H Trenching as well as several public-entity and public-employee defendants.

1

Compl., ECF No. 1.  The City of Marysville ("the City") was among
the public entities Plaintiffs named.  Compl. ¶ 1.  The City
filed a motion to dismiss, ECF No. 4, which the Court ultimately
granted in part and denied in part.  February 22, 2019 Order
("Order"), ECF No. 17.

Plaintiffs filed an amended complaint, reviving several
claims the Court dismissed without prejudice.  First Am. Comp.
("FAC"), ECF No. 20.  The City filed another motion to dismiss.
Mot. to Dismiss ("Mot."), ECF No. 23.  Plaintiffs opposed the
motion, Opp'n, ECF No. 27.  They also filed a motion to strike
six of the affirmative defenses listed in the County of Yuba and
Yuba County Code Enforcement's (collectively "the County") Answer
to Plaintiffs' amended complaint.  Mot. to Strike, ECF No. 25,
see also Amended Answer with Jury Demand ("Answer"), ECF No. 24.[1]

For the reasons discussed below, the Court GRANTS in part
and DENIES in part the City's motion to dismiss.  The Court
DISMISSES Plaintiffs' First and Eighth Amendment claims WITH
PREJUDICE.  To the extent Plaintiffs' Section 1983 claim is
premised on the City's 13-step plan to evacuate homeless
encampments using trespass law, the Court DISMISSES their Equal
Protection claim WITH PREJUDICE.  But to the extent Plaintiffs'
Section 1983 claim is premised on the City's municipal custom of
displacing homeless persons and destroying their property, the
Court DENIES the City's motion to dismiss Plaintiffs' Equal
Protection claim.  The Court also DENIES the City's motion to

---

[1] This motion was determined to be suitable for decision without
oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
scheduled for June 4, 2019.

dismiss Plaintiffs' Bane Act and state constitution claims. Finally, the Court DENIES the City's motion to dismiss Plaintiffs' class allegations and requests for equitable relief as premature.

The Court GRANTS in part and DENIES in part Plaintiffs' motion to strike. The Court STRIKES the County's second affirmative defense to the extent the County asserts it against Plaintiffs' federal claims. The Court STRIKES the County's fifth and eighth affirmative defenses in full and WITH PREJUDICE. The Court STRIKES the County's third, sixth, and seventh, affirmative defenses in full but WITHOUT PREJUDICE.

## I. FACTUAL ALLEGATIONS

The parties are familiar with Plaintiffs' allegations against the City. In short, Plaintiffs contend the City engaged in a campaign of displacing homeless individuals from their riverbank encampments and destroying their property. See generally FAC. Plaintiffs contend that, on at least four occasions from February 2016 to January 2017, the City evacuated Plaintiffs from their encampments or barred re-entry due to flooding or the threat thereof. FAC ¶¶ 17-37. Notwithstanding this rationale, the City relocated Plaintiffs to other flood zones, where it eventually repeated the process of evacuating residents and destroying their property. Id.

## II. OPINION

### A. Motion to Dismiss

#### 1. Judicial Notice

In its reply brief, ECF No. 29, the City requests the Court take judicial notice of its charter. RJN, ECF No. 29-1.

Plaintiffs filed objections to this request, ECF No. 31, arguing (1) it was untimely, (2) the charter is not a proper subject of judicial notice, and (3) the charter is irrelevant to the issues being resolved.  Objections at 2-3.

Under the Local Rules, requests for judicial notice are generally better-suited in a party's opening brief.  See E.D. Cal. L.R. 230(b).  This is particularly true when a party uses the request to expand an argument that "was inadequately developed in the initial motion."  Cf. Ass'n of Irritated Residents v. C&R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006).  But here, the City's reply brief and accompanying request for judicial notice do not aim to expand an earlier argument.  Rather, they respond to an argument Plaintiffs make in their opposition brief—namely, that "it is plausible Defendants Samayoa and Borsden [sic.] possessed policymaking authority."  See Reply at 1 (citing Opp'n at 8).  Plaintiffs lack authority for the proposition that a request for judicial notice included in a reply brief is untimely even if it is in response to an argument made by the other party.

Nevertheless, the Court finds the City's request for judicial notice is inappropriate.  As Plaintiffs argue, Federal Rule of Evidence 201(b)(2) only allows courts to take judicial notice of the existence of matters of public record; not of the truth of information in those documents.  Lasar v. Ford Motor Co., 399 F.3d 1101, 1117 n.14 (9th Cir. 2005).  Here, the City requests the Court take judicial notice of its charter "to show the fact that all legislative power, and all other powers granted to and invested in the City . . . shall be exercised by

4

the Council of the City of Marysville." RJN at 2. Judicial notice does not serve this function. The Court, therefore DENIES the City's request.

### 2. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Courts must dismiss a suit if the plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). When considering a motion to dismiss, a Court "must accept as true all of the allegations contained in a complaint" and "draw []reasonable inference[s]" in Plaintiffs' favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." Id. "Unwarranted inferences" are likewise "insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

Rule 12(b)(6)'s plausibility standard "is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### 3. Analysis

#### a. Statute of Limitations

Section 1983 does not have its own statute of limitations. Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198

(9th Cir. 2014).  Rather, federal courts "apply the forum state's statute of limitations for personal injury actions." Butler, 766 F.3d at 1198.  California's statute of limitations for personal injury claims is two years.  Butler, 766 F.3d at 1198 (citing Cal. Civ. Proc. Code § 335.1).  Even so, the continuing violations doctrine allows claims that would ordinarily be time-barred to proceed if the plaintiff can show those claims arose out of a "systematic policy or practice of discrimination that operated, in part, within the limitations period."  Morgan v. Nat'l RR Passenger Corp., 232 F.3d 1008, 1015 (9th Cir. 2000).

The City argues Elliott and Motley's claims are barred by the statute of limitations.  Mot. at 7-8.  The Court has already rejected this argument, finding the continuing violations doctrine brought Elliot and Motley's Section 1983 claims within the statute of limitations.  Opp'n at 10; Order at 11-12.  That decision is now law of the case.  Gilman v. Brown, No. 05-cv-830-LKK-GGH, 2013 WL 1904424 at *13 n.31 (E.D. Cal. May 7, 2013).

The City also argues that Viet, Owens, Dempsey, Antrapp, Bartholomew, and Skeen's Section 1983 claims are time-barred.  Paragraph 37 of the complaint states, "over a time period roughly stretching from March 2016 through October 2016," these Plaintiffs "lived at each of the homeless encampments."  The City maintains this allegation is conclusory and fails to show that any act against these Plaintiffs fell within the statute of limitations.  Mot. at 8.  The Court declines to read this paragraph in isolation as the City would have it do.  See id.

Paragraphs 21-33 of the complaint lay out factual content relevant to the time period referenced in Paragraph 37.  These paragraphs include allegations of municipal misconduct ranging from March 2016 to October 17, 2016.  FAC ¶¶ 21, 28-29, 32-33. Although some of the conduct Viet, Owens, Dempsey, Antrapp, Bartholomew, and Skeen challenge lies beyond the two-year statute of limitations, Plaintiffs allege conduct as part of a "systematic policy or practice of discrimination that operated, in part, within the limitations period."  Morgan v. Nat'l RR Passenger Corp., 232 F.3d 1008, 1015 (9th Cir. 2000); see also infra at 10-12.  Because the continuing violations doctrine applies to these Plaintiffs' Section 1983 claims, the Court DENIES the City's motion to dismiss them as time-barred.

b.    Municipal Liability

To impose Section 1983 liability on a local government, plaintiffs bear the burden of showing that a "municipal policy" or "custom" was the "moving force" behind their injuries. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).  To prove a "municipal policy," plaintiffs must identify: (1) a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or (2) an act taken by an official with final policymaking authority in that area.  City of St. Louis v. Prapotnik, 485 U.S. 112, 121-23 (1998).  A court may not simply hold a municipality vicariously liable for its employees' actions.  Connick v. Thompson, 563 U.S. 51, 60 (2011) (internal quotations omitted).  But absent a "written law or express municipal policy," plaintiffs may allege the City maintained an

unconstitutional custom—"the existence of a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." <u>Id.</u> at 127 (internal quotations omitted).

Here, Plaintiffs properly identified both a municipal policy and a municipal custom. But, as pled, neither resulted in plausible violations of the First or Eighth Amendment. Accordingly, the Court DISMISSES these claims WITH PREJUDICE. Plaintiffs did, however, adequately allege that the municipal custom identified was the moving force behind the City's violation of Equal Protection Clause. The Court DENIES the City's motion to dismiss this claim.

### i. Policy

The City argues Plaintiffs failed to identify a policy in support of their municipal liability because (1) the "13-step plan to expel homeless persons" referenced in the Complaint was never "voted on, ratified, or adopted by the City"; and (2) none of the individually-named Defendants in Plaintiffs' complaint possess "final policymaking authority" for the City. Mot. at 7-8. The City's first argument fails. When challenging an express municipal policy, it is true that plaintiffs must identify "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell</u>, 436 U.S. at 690. But Plaintiffs allegations satisfy the "adoption" requirement. Plaintiffs allege the City of Marysville joined the "Marysville Police Department, County of Yuba, and Yuba County Code Enforcement" to "develop[] a '13-step plan to expel homeless persons from the encampments located on

City-owned property outside the City's limits." FAC ¶ 21. The "City-County Liaison Committee" originally devised this plan in an effort to "remove homeless persons from the [homeless] encampments using trespass law." FAC ¶ 22. They titled the plan "Tasks and Timeline for Removing Unauthorized Occupants from City-Owned Lands," assigning "specific shared responsibilities" to each of the group's members. FAC ¶ 21. Given these allegations and the complaint as a whole, the Court finds Plaintiffs adequately alleged the City "adopted" the 13-step plan, such that it amounted to an official policy.

The City's second argument withstands Plaintiffs' opposition. The complaint ascribes final policy-making authority to the City of Marysville Mayor, Ricky Samayoa, and the City Attorney, Brent Bordsen. FAC ¶ 6-7. Plaintiffs argue that "these allegations must be assumed true." Opp'n at 8 (quoting Sanchez v. City of Fresno, [cite]). But, as both parties concede, the question of whether an official possesses final policymaking authority is a question of state law. See Opp'n (citing Barone v. City of Springfield, 902 F.3d 1091, 1107-08 (9th Cir. 2018)); Reply at 1 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469 482-83 (1986)). Plaintiffs' legal conclusions, couched as factual allegations, do not receive the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It was, therefore, incumbent on Plaintiffs to oppose the City's motion by identifying a state or local law that granted the Mayor or City Attorney "final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 482. They did not. The Court, therefore finds

Plaintiffs failed to allege either Samayoa's or Bordsen's statements amounted to official municipal policy.

## ii. Custom

Plaintiffs have made an adequate showing of municipal custom at this stage in the litigation.  Courts have not precisely defined the contours of Monell's "custom" requirement. See Gonzalez v. County of Merced, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017) ("It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim) (collecting cases).  A court must consider the duration, frequency, and consistency of the conduct challenged, as "[l]iability for improper custom may not be predicated on isolated or sporadic incidents."  Trevino v. Gates 99 F.3d 911, 918 (9th Cir. 1996).  At bottom, courts must assess whether the conduct challenged was "so persistent and widespread" that it "practically [had] the force of law" or had "become a traditional method of carrying out policy."  Id.; Connick, 563 U.S. at 61.

The City argues Plaintiffs' identification of "three dissimilar episodes" is not enough to plead a municipal custom. Mot. at 4.  Adopting a granular view of each incident, the City loses the forest for the trees.  Plaintiffs allege that, after a decade of directing hundreds of homeless people to live in riverbank encampments, the City began forcibly evacuating them from the area.  FAC ¶¶ 12-15, 34-35.  The City prevented the residents from retrieving their property, then destroyed it. FAC ¶¶ 19-20, 29, 30, 34, 36-37.  The City claimed flooding and the threat of flooding justified their actions.  FAC ¶¶ 33, 34.

And yet, after each evacuation, it relocated the displaced individuals to other flood zones that they later evacuated and destroyed.  FAC ¶¶ 32-36.  Specifically, Plaintiffs allege the City evacuated and/or destroyed property at four different locations, affecting 300-500 people.  FAC ¶ 13.

The City's efforts to analogize Wilson v. Cook County, 742 F.3d 775, 780 (7th Cir. 2014) and Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) do not persuade the Court.  See Mot. at 4.  In Wilson, 742 F.3d at 775, the plaintiff alleged Cook County had a custom of not responding to sexual harassment complaints.  The county employee accused of sexual harassment had a prior sexual harassment complaint on his record.  Id.  The plaintiff argued the county's failure to terminate the employee gave rise to an unconstitutional custom of tolerating sexual harassment.  Id.  The court responded, "[a]lthough this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."  Id.  Similarly, in Andrews, 98 F.3d at 1075, a plaintiff sued North Sioux City after one of the city's police officers sexually assaulted her.  The officer had been the subject of two prior complaints.  Id.  Even so, the Eighth Circuit found the city's failure to terminate that officer following the complaints did not amount to custom of overlooking police misconduct.  Id.

This case does not involve similar facts or allegations as the case at bar. Plaintiffs here allege the City undertook a year-long operation, displacing hundreds of people from multiple locations, destroying their property, and threatening arrest.

Viewing the allegations in the light most favorable to
Plaintiffs, the Court finds the complaint sufficiently
identified a municipal custom.

### iii. Moving Force

Identifying a policy or custom is not, in itself, enough to
give rise to a claim of municipal liability.  Monell, 436 U.S.
at 694.  A plaintiff must also prove the policy or custom was
the moving force behind the alleged constitutional violations.
Id.  The City argues that, by Plaintiffs' own admission, the 13-
step plan was not the "moving force" behind the City's allegedly
unlawful conduct—"[t]o the contrary, the Complaint goes on to
allege the City took an almost immediate departure from the
plan."  Mot. at 3 (citing FAC ¶ 22).  The Court agrees.  The
complaint repeatedly highlights the frequency and severity of
the City's departure from the original plan to "remove homeless
persons from the encampments using trespass law."  FAC ¶ 22-36.
Plaintiffs may take issue with the propriety of the 13-step
plan, but they do not maintain that it encouraged or required
any of the City's misconduct.  To the extent that Plaintiffs'
Section 1983 claim rests on the theory that the 13-step plan was
the moving force behind the City's unconstitutional conduct, the
Court finds that any further amendment would be futile and it is
DISMISSED WITH PREJUDICE on this theory.

The municipal custom Plaintiffs identify does not suffer
the same flaw as the 13-step plan.  Plaintiffs allege the City's
practice of moving homeless individuals from one flood zone to
the next and destroying their property directly resulted in the
constitutional injuries Plaintiffs suffered.  Therefore, the

only question remaining under Section 1983 is whether the actions carried out pursuant to this custom give rise to plausible First Amendment, Eighth Amendment, or Equal Protection claims.

### iv. First Amendment

As a preliminary matter, the parties dispute whether Plaintiffs' amended complaint tries to revive the Retaliation claim the Court dismissed with prejudice in its February order. Mot. at 2; Opp'n at 3-4; see also Order at 14. For the reasons set forth in Plaintiff's opposition, the Court finds the amended complaint does not reassert the previously-dismissed Retaliation claim. See Opp'n at 1-4.

Plaintiffs contend the City's destruction of Brigitte Butcher's books and art supplies during the Hollywood Park evacuation violated her First Amendment rights. Mot. at 1-2. The City opposes this argument, contending Arcara v. Cloud Books, Inc., 478 U.S. 697, 706 (1986) forecloses relief. Reply at 2-3. The Court agrees with the City. Arcara, 478 U.S. at 704-05 clarified that First Amendment scrutiny does not apply to every incidental burden on expressive conduct. Rather, the Court stated:

> [W]e have subjected [criminal and civil sanctions] to scrutiny only where it was conduct with a significant expressive element that drew the legal remedy in the first place . . . or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity . . . .

Id. at 706-07.

The City argues Plaintiffs' allegations do not fall within either of the two categories that are entitled to First

13

Amendment scrutiny. Reply at 2-3. Plaintiffs do not cite to any authority to the contrary. Plaintiffs' opposition only cites to cases where bookstores and other literature distributors received First Amendment protection against content-based restrictions. The complaint does not contain any allegations to support the notion that the City destroyed Butcher's library because of the types of books she owned or her ability to make protest signs. Rather the burden on Butcher's expressive conduct was incidental to the City's alleged destruction of all the property in each of the homeless encampments. Based on the authority cited in support of Plaintiff's original and amended First Amendment claims, the Court finds that granting leave to amend this claim would be futile. The Court, therefore, DISMISSES Plaintiffs' First Amendment claim WITH PREJUDICE.

v. <u>Eighth Amendment</u>

Plaintiffs argue the City's evacuation and destruction of the homeless encampments amounts to cruel and unusual punishment under the Eighth Amendment. The Court's previous order identified the defects in Plaintiffs' Eighth Amendment claims. Order at 16-18. The amended complaint cured one of these defects, pleading the City was without alternative shelters. FAC ¶ 16. But the other defects remain. Because amendment appears to be futile, the Court DISMISSES Plaintiffs' Eighth Amendment claims WITH PREJUDICE.

vi. <u>Equal Protection Clause</u>

Plaintiffs adequately alleged the City violated their rights under the Fourteenth Amendment's Equal Protection Clause.

14

As in its first motion to dismiss this claim, the City relies on its contention that homelessness is not a suspect class entitled to heightened scrutiny. As the Court explained in its February Order—and as the City acknowledges—a law that "neither burdens a fundamental right nor targets a suspect class" must nonetheless "bear[] a rational relation to some legitimate end." Reply at 5 (quoting Romer v. Evans, 517 U.S. 620, 631 (1996)); see also Order at 19. Plaintiffs allege the City needlessly destroyed their property without giving them a meaningful opportunity to evacuate on their own terms or retrieve their property. See generally FAC. Taking the allegations in the complaint as true, and raising all reasonable inferences in Plaintiffs' favor, the Court finds the City treated Plaintiffs—and their alleged code violations—differently because of their homeless status, and that this disparate treatment was not rationally related to any legitimate end. The Court DENIES the City's motion to dismiss Plaintiffs' Equal Protection claim.

vii. <u>Substantive Due Process</u>

In its reply, the City concedes that its motion to dismiss "did not specifically address Plaintiff's substantive due process claim." Reply at 5. It nonetheless urges the court to dismiss the claim because of "the absence of non-conclusory facts in the Complaint that would be necessary to support such a claim." Id. The Court finds that the City's opening motion did not sufficiently notify Plaintiffs of a need to defend their substantive due process claim. The Court therefore declines to address the argument absent full briefing by both sides.

///

c.    State Law Claims

i. Bane Act

The Bane Act creates a cause of action when a defendant "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment ... of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(a), (b). The City argues Plaintiffs failed to allege a viable claim under the Bane Act for three reasons: 1) any claim for damages is barred by the Government Tort Claims Act; 2) Plaintiffs fail to allege a constitutional violation; and 3) Plaintiffs fail to allege the City "intentionally" engaged in "threats, intimidation, or coercion independent of any alleged constitutional violation." Mot. at 6-7. Each of these arguments fail.

First, Plaintiffs' Bane Act claim is for injunctive and declaratory relief; not monetary damages. See FAC ¶ 143. The claim is, therefore, not barred by the strict exhaustion requirement the Government Tort Claims Act imposes on claims for damages. See Inman v. Anderson, 294 F. Supp. 3d 906, 923 (N.D. Cal. 2018). Furthermore, as stated in this Order and the Court's previous Order, Plaintiffs have sufficiently pled constitutional violations under the Fourth Amendment and the Equal Protection clause. See supra at 15; see also Order at 16. Finally, each case the City cites for the proposition that Plaintiffs must allege "threats, intimidation, or coercion independent of any alleged constitutional violation" is no longer binding authority.

See Mot. at 6 (citing Gant v. County of Los Angeles, 772 F.3d 608, 624 (9th Cir. 2014); Roy v. County of Los Angeles, 114 F. Supp. 3d 1030, 1045 (C.D. Cal. 2015). In 2018, the Ninth Circuit held that a plaintiff's allegations of "threats, intimidation, or coercion" need not be independent of the alleged violation. Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018). Rather, those elements could inhere in the violation itself. Id. Reese, 888 F.3d at 1043 did impose a "specific intent" requirement onto Bane Act claims. But the Court finds the allegations in Plaintiffs complaint, taken as true, support a plausible claim that the City intentionally violated Plaintiffs' rights under the Fourth Amendment and Equal Protection Clause. The Court DENIES the City's motion to dismiss Plaintiffs Bane Act claims.

### ii. State Constitution

The California Constitution provides similar protections as those afforded in the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. The City argues the Court must dismiss Plaintiffs claims under Sections 2, 3, 7, 13, and 17 of the California Constitution because the provisions do not create a private right of action for damages. Plaintiffs are not seeking monetary damages for their state constitution claims, only injunctive and declaratory relief. See FAC ¶¶ 93, 99, 105, 111, 123. The California Constitution allows for this type of relief. See Katzberg v. Regents of University of California, 29 Cal.4th 300, 312,314-15 (Cal. 2002). The Court, therefore, DENIES the City's motion to dismiss Plaintiffs' claims under the state constitution.

1    d.   Equitable Relief

2        The City seeks to "dismiss" Plaintiffs' prayer for

3    injunctive and declaratory relief.  Mot. at 10-11.  As

4    Plaintiffs argue, "[i]t is premature at the pleading stage to

5    eliminate a potential remedy should plaintiffs prevail in this

6    litigation."  Opp'n at 14-15 (quoting Johnson v. Shasta County,

7    83 F. Supp. 3d 918, 933-34 (E.D. Cal. 2015) (collecting cases)).

8    The Court DENIES the City's motion to dismiss Plaintiffs'

9    request for equitable relief as premature.

10    e.   Class Allegations

11        Lastly, the City argues the Court should dismiss all of

12    Plaintiffs' class allegations.  Mot. at 12.  The Court declines

13    to take such an extraordinary step at this stage of the

14    litigation.  The Ninth Circuit has said that "compliance with

15    Rule 23 is not to be tested by a motion to dismiss for failure

16    to state a claim."  Gillibeau v. City of Richmond, 417 F.2d

17    426, 432 (9th Cir. 1969).  The Eastern District continues to

18    affirm that principle. See, e.g., Larson v. Harman Mgmt Corp.,

19    No. 1:16-cv-00219-DAD-SKO, 2016 WL 6298528 at *5 (E.D. Cal. Oct.

20    27, 2016); Davenport v. Wendy's Co., No. 2:14-cv-00931-JAM-DAD,

21    2014 WL 3735611 (E.D. Cal. July 25, 2014).  The Court DENIES the

22    City's motion to dismiss Plaintiffs' class allegations as

23    premature.

24    B.   Motion to Strike County's Affirmative Defenses

25    1.   Legal Standard

26        Federal Rule of Civil Procedure 12(f) governs motions to

27    strike.  "Motions to strike are generally viewed with disfavor

28    and will usually be denied unless the allegations in the

18

pleading have no possible relation to the controversy and may cause prejudice to one of the parties." <u>Sliger v. Prospect Mortg., LLC</u>, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011).

Even so, a court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). A matter is redundant if it "constitutes[] needless repetition"; is "foreign to the issue"; or merely addresses the elements of the cause of action. <u>Sliger</u>, 789 F. Supp. 2d at 1216; <u>Gomez v. J. Jacobo Farm Labor Contractor, Inc.</u>, 188 F. Supp. 3d 986, 991 (E.D. Cal. 2016). A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." <u>Sanchez v. City of Fresno</u>, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012). A matter is impertinent if it "consists of statements that do not pertain . . . to the issues in question." <u>Id.</u>

The Court may also strike from a pleading any "insufficient defense." Fed. R. Civ. Proc. 12(f). An affirmative defense may be insufficient as a matter of law or as a matter of pleading. <u>Mayfield v. County of Merced</u>, No. 1:13-cv-1619-LJO-BAM, 2015 WL 791309 at *3 (E.D. Cal. Feb. 25, 2015). An affirmative defense is insufficient as a matter of law "only if it lacks merit under any set of facts a defendant might allege." <u>Id.</u> An affirmative defense is insufficient as a matter of pleading when it fails to "provide the plaintiff fair notice of the defense." <u>Staggs v. Doctor's Hosp. of Manteca</u>, No. 2:11-cv-00414, 2016 WL 3027742 at *1 (E.D. Cal. May 27, 2016). The Court declines to apply the <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) pleading standard to affirmative

defenses.  California district courts previously split on the question of whether a "heightened" pleading standard applied to affirmative defenses.  But, as the County argues, following the Ninth Circuit's decision in Kohler v. Flava Enterprises, Inc., the Eastern District has consistently rejected the Rule 12(b)(6) standard when deciding Rule 12(f) motions.  779 F.3d 1016, 1019 (9th Cir. 2015) ("[T]he 'fair notice' required by the pleading standards only requires describing the defense in 'general terms.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1274 (3d ed. 1998)); see also Staggs v. Doctor's Hosp. of Manteca, 2016 WL 3027742 at *1; Joe Hand Promotions, Inc. v. Williams, No. 2:14-cv-02663-JAM-AC, 2016 WL 5109474 at *1 (E.D. Cal. Sept. 19, 2016).

    2.  Analysis

        a.  Second Affirmative Defense: Comparative Fault

Plaintiffs argue the County's comparative fault defense is legally insufficient to the extent that it is alleged against any non-negligence claims.  Mot. to Strike at 4-5.  The County's opposition specifies that it is only asserting this defense against Plaintiffs' negligence claims.  Opp'n to Mot. to Strike at 6.  Given the County's representation on the record, the Court does not find the Answer's imprecision prejudices Plaintiff.  But Plaintiffs are correct that the County's Answer does not expressly limit the scope of its comparative fault defense.  Reply ISO Mot. to Strike at 3, ECF No. 28.  For clarity's sake, the Court GRANTS Plaintiffs' motion to strike the county's second affirmative defense to the extent that it is alleged against any non-negligence claims.

Plaintiffs also argue the County's comparative fault defense is factually insufficient. Mot. to Strike at 5. <u>See also</u> Answer at 10, ECF No. 25. This argument attempts to hold the County to a higher pleading standard than Rule 12(f) requires. For the reasons set forth in the County's opposition, the Court finds the County's second affirmative defense is factually sufficient. <u>See</u> Opp'n to Mot. to Strike at 6-7, ECF No. 26 (citing <u>Vargas v. County of Yolo</u>, 2:15-cv-02537-TLN-CKD, 2016 WL 3916329 at *8 (E.D. Cal. July 20, 2016)). The Court DENIES Plaintiffs' motion to strike the County's second affirmative defense on this ground.

### b. <u>Third Affirmative Defense: Third-Party Liability</u>

Plaintiffs argue the County's third affirmative defense is redundant and both legally and factually insufficient. Mot. to Strike at 5-6. The Court, again, agrees that third-party liability may only be asserted against a plaintiff's negligence claims. This defense is, therefore, legally insufficient to the extent that it is asserted against any of Plaintiffs' non-negligence claims.

But the County's third affirmative defense is also factually insufficient. The Answer reads:

> Based on information and belief, Defendants allege that third persons or entities other than the answering Defendants were responsible for the damages alleged by Plaintiffs. Defendants are informed and belief [sic] that it was the fault or negligence of third parties, and not any act or acts of the answering Defendants, which proximately contributed to the damages, if any, suffered by Plaintiffs.

Answer at 10. Unlike the County's second affirmative defense,

the third affirmative defense is too vague to provide

Plaintiffs' fair notice of the defense.  Plaintiffs cite

Devermont v. San Diego, No. 12-cv-01823-BEN-KSC, 2013 WL 2898342

at *7 (S.D. Cal. June 14, 2013).  Applying the "fair notice"

standard to a Section 1983 claim, the Southern District struck a

similar defense where "[d]efendants [did] not identify, even in

general terms, any other 'person' whose act or omission

purportedly caused Plaintiffs [sic] injury."  Absent general

identifying information, the grounds for the defense is

"unclear."  Id.  Although the Court is not bound by decisions

from the Southern District, it finds Devermont's rationale

persuasive.

Furthermore, the Court finds this factual insufficiency may

be prejudicial, potentially subjecting Plaintiffs to

"unnecessary and irrelevant discovery."  Mot. to Strike at 10.

The County argues, "given [] there are other parties named in

the lawsuit, [] an affirmative defense [that] points to third

parties presents no prejudice or surprise."  Opp'n to Mot. to

Strike at 7-8.  The presence of multiple defendants does not

adequately clarify the scope of this affirmative defense.  As

illustrated by Devermont, 2013 WL 2898342 at *7, the relevant

question is not whether the defense gave plaintiffs notice that

defendants could shift blame onto a third party, but whether the

defense gave plaintiffs notice of to whom defendants were

shifting blame.

The Court STRIKES the County's third affirmative defense

WITHOUT PREJUDICE.  Because the Court strikes the County's third

affirmative defense in full as factually insufficient, it need

1    not address whether the defense is also redundant.

2                    c.    Fifth Affirmative Defense: California

3                          Government Claims Act

4       Both parties agree that the California Government Claims

5    Act is immaterial to the extent that Plaintiffs only seek

6    nonpecuniary relief in connection with their state law claims.

7    See Mot. to Strike at 7; Opp'n to Mot. to Strike at 9.  The

8    County nonetheless maintains, "[i]n the absence of [an] amended

9    complaint making it clear [] that Plaintiffs are not seeking

10   damages under state law . . . this affirmative defense is

11   legally sufficient, material, and pertinent."  Opp'n to Mot. to

12   Strike at 9.  It is already clear under the operative complaint

13   that Plaintiffs only seek injunctive and declaratory relief for

14   their state law claims.  See FAC ¶¶ 93, 99, 105, 111, 117, 123 &

15   143.  The Court STRIKES the County's fifth affirmative defense

16   WITH PREJUDICE.

17                   d.    Sixth Affirmative Defense: Non-Specified

18                         California Statutory Immunities

19      Both parties agree that immunities provided by California

20   law do not apply to Plaintiffs' Section 1983 claims.  Mot. to

21   Strike at 7; Opp'n to Mot. to Strike at 9.  The County's sixth

22   affirmative defense is legally insufficient to the extent that

23   it is asserted against any of Plaintiffs' federal law claims.

24      Plaintiffs argue the County's sixth affirmative defense is

25   also factually insufficient.  Mot. at 7-8.  The defense reads:

26   "Each act or omission alleged in the Complaint against [the

27   County] falls within the immunities and defenses described in

28   sections 815, et seq., and 900, et seq., of the Government Code

as [the County] is a public entity."  Answer at 11.

The Court recognizes the tension created by Neylon v. County of Inyo, No. 1:16-cv-0712, 2017 WL 3670925 at *10 (E.D. Cal. Aug. 25, 2017) and Jing Yao v. County of Folsom, No. 2:16-cv-2609, 2017 WL 1383274 at *2 (E.D. Cal. Aug. 18, 2017)—two cases decided by the Eastern District, only 8 days apart. Plaintiffs cite Neylon, 2017 WL 3670925 at *10, where the Court struck the defendant's immunity defense as factually insufficient because it required plaintiff "to guess at who [was] actually alleging immunity, [] what conduct [was] entitled to immunity, and how the immunity might apply."  The County cites, Jing Yao, 2017 WL 1383274 at *2, where the Court declined to strike the state immunity defenses despite defendants' "fail[ure] to identify which party and claim each affirmative defense applie[d] to."  The Court need not resolve this tension as the County's "non-specified California statutory immunity" defense is even more vague than the immunity defense upheld in Jing Yao, 2017 WL 1383274 at *3.  The Court, therefore, STRIKES the County's sixth affirmative defense WITHOUT PREJUDICE.

e. Seventh Affirmative Defense: Cal. Gov. Code § 820.2 (Discretionary Immunity)

Both parties agree California Government Code Section 820.2 does not apply to Plaintiffs' Section 1983 claims.  Mot. to Strike at 8; Opp'n to Mot. to Strike at 10.  The County's seventh affirmative defense is legally insufficient to the extent that it is asserted against any of Plaintiffs' federal law claims.

Plaintiffs argue the County's seventh affirmative defense

24

is also factually insufficient.  Mot. to Strike at 8-9.  This defense suffers the same flaws as its sixth affirmative defense. See supra at 23-24.  See also Neylon, 2017 WL 3670925 at *10. The Court, therefore, STRIKES the County's seventh affirmative defense WITHOUT PREJUDICE.

### f.  Eighth Affirmative Defense: Cal. Gov. Code § 820.4 (Due Care)

Both parties agree California Government Code Section 820.4 does not apply to Plaintiffs' Section 1983 claims.  Mot. to Strike at 9; Opp'n to Mot. to Strike at 11.  The County's eighth affirmative defense is legally insufficient to the extent that it is asserted against any of Plaintiffs' federal law claims.

Plaintiffs argue the County's eighth affirmative defense is also redundant.  Mot. to Strike at 9.  The Court views the County's failure to respond to this argument as acquiescence. See Halcomb v. City of Sacramento, No. 2:14-cv-02796, 2015 WL 9319495 at *1 (E.D. Cal. Dec. 23, 2015). The Court STRIKES the County's eighth affirmative defense WITH PREJUDICE.

### III.  ORDER

For the reasons set forth above, the Court GRANTS in part and DENIES in part the City's motion to dismiss.  The Court DISMISSES Plaintiffs' First Amendment and Eighth Amendment claims WITH PREJUDICE.  Furthermore, to the extent Plaintiffs' Section 1983 claim is premised on the City's "13-step plan", the Court DISMISSES their Equal Protection claim WITH PREJUDICE.  But to the extent Plaintiffs' Section 1983 claim is premised on the City's custom of displacing homeless persons and destroying their property, the Court DENIES the City's motion to dismiss

Plaintiffs' Equal Protection claim.  The Court also DENIES the
City's motion to dismiss Plaintiffs' Bane Act and state
constitution claims.  Finally, the Court DENIES the City's motion
to dismiss Plaintiffs' class allegations and requests for
equitable relief as premature. The City shall file its Answer
within twenty days of this Order.

The Court GRANTS in part and DENIES in part Plaintiffs'
motion to strike the County's affirmative defenses.  The Court
STRIKES the County's second affirmative defense to the extent the
County asserts it against Plaintiffs federal claims.  The Court
STRIKES the County's fifth and eighth affirmative defenses in
full and WITH PREJUDICE.  The Court STRIKES the County's third,
sixth, and seventh affirmative defenses in full WITHOUT
PREJUDICE. If the County elects to file an Amended Answer it must
do so within twenty days of this Order.

IT IS SO ORDERED.

Dated: July 24, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE